ROBERT THOMPSON, as Chairman of the Communist Party of the State of New York, et al., Appellants, *v.* WILLIAM J. WALLIN et al., Constituting the Board of Regents of the University of the State of New York, Respondents.

In the Matter of CHARLES L'HOMMEDIEU et al., Appellants, against BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents.

ABRAHAM LEDERMAN, as President of Teachers Union of the City of New York, Local 555 of the United Public Workers, et al., Plaintiffs, and IRVING ADLER et al., Appellants, *v.* BOARD OF EDUCATION OF THE CITY OF NEW YORK, Respondent.

Argued October 11, 1950; decided November 30, 1950.

*Abraham Unger, Osmond K. Fraenkel, David M. Freedman* and *Bernard Jaffe* for appellants in first above-entitled action. I. Chapter 360 of the Laws of 1949 is a bill of attainder, in violation of the Constitution of the United States (art. I, § 10). (*United States* v. *Lovett,* 328 U. S. 303; *American Communications Assn.* v. *Douds,* 339 U. S. 382; *Cummings* v. *Missouri,* 4 Wall. [U. S.] 277.) II. The Legislature has no constitutional

right and lacks the legislative power to judge the doctrines of the Communist party or other organizations, to direct the Board of Regents to place them upon a subversive list based upon its judgment of their doctrine, and to disqualify their members as public school teachers because of that doctrine (U. S. Const., 14th, 1st, 9th Amendts.; N. Y. Const., art. I, §§ 8, 9). (*Martin* v. *Hunter's Lessee,* 1 Wheat. [U. S.] 304; *M'Culloch* v. *Maryland,* 4 Wheat. [U. S.] 316; *West Virginia State Bd. of Educ.* v. *Barnette,* 319 U. S. 624; *United States* v. *Dennis,* 183 F. 2d 201; *Whitney* v. *California,* 274 U. S. 357; *Matter of Bridgman* v. *Kern,* 257 App. Div. 420; *Ex parte Milligan,* 4 Wall. [U. S.] 2; *De Jonge* v. *Oregon,* 299 U. S. 353.)

*Frederic A. Johnson, Osmond K. Fraenkel, Fred G. Moritt* and *Morris Eisenstein* for appellants in second above-entitled proceeding. The Feinberg Law vests judicial power over civil rights in an administrative body contrary to the constitutional guarantees of due process and of equal protection of the laws, it is an *ex post facto* law; and, a bill of attainder. (*Whitney* v. *California,* 274 U. S. 357; *Palko* v. *Connecticut,* 302 U. S. 319; *Staten Is. Edison Corp.* v. *Maltbie,* 296 N. Y. 374; *Matter of Tompkins* v. *Board of Regents of Univ. of State of N. Y.,* 299 N. Y. 469; *Matter of Friedel* v. *Board of Regents of Univ. of State of N. Y.,* 296 N. Y. 347; *Adams* v. *United States ex rel. McCann,* 317 U. S. 269; *Kring* v. *Missouri,* 107 U. S. 221.)

*Nathaniel L. Goldstein, Attorney-General* (*Wendell P. Brown* and *Ruth Kessler Toch* of counsel), for respondents in first above-entitled action and second above-entitled proceeding. I. The standards for qualification as teachers in the public schools of this State are statutory, fixed by the Legislature which may, constitutionally, require as qualification, and declare as disqualification, factors other than scholastic, including, as a qualification, adherence to the form of Government of the United States, and as a disqualification, advocacy of the overthrow of the Government by force, violence or other unlawful means. (*Hawker* v. *New York,* 170 U. S. 189; *Patsone* v. *Pennsylvania,* 232 U. S. 138; *McAuliffe* v. *Mayor of New Bedford,* 155 Mass. 216; *United Public Workers* v. *Mitchell,* 330 U. S. 75; *American Communications Assn.* v. *Douds,* 339 U. S. 382; *United States* v. *Dennis,* 183 F. 2d 201; *People* v. *Crane,* 214 N. Y. 154, 239 U. S.

195; *Heim* v. *McCall*, 214 N. Y. 629, 239 U. S. 175; *Friedman* v. *Schwellenbach*, 159 F. 2d 22; *Washington* v. *Clark*, 84 F. Supp. 964; *Washington* v. *McGrath*, 182 F. 2d 375; *Matter of Rabouine* v. *McNamara*, 275 App. Div. 1052; *Matter of Koral* v. *Board of Educ. of City of N. Y.*, 197 Misc. 221; *Matter of Davis* v. *Impelliteri*, 197 Misc. 162; *Weinstock* v. *Ladisky*, 197 Misc. 859; *Barsky* v. *United States*, 167 F. 2d 241, 334 U. S. 843.) II. The Feinberg Law does not infringe upon the freedoms guaranteed by the Constitution. Moreover, these freedoms are not absolute rights. They do not render the Government impotent to protect its existence as against those who advocate its overthrow by force. (*American Communications Assn.* v. *Douds*, 339 U. S. 382; *United States* v. *Dennis*, 183 F. 2d 201; *Gitlow* v. *New York*, 268 U. S. 652; *Whitney* v. *California*, 274 U. S. 357; *United States ex rel. Milwaukee Social Dem. Pub. Co.* v. *Burleson*, 255 U. S. 407; *Barsky* v. *United States*, 167 F. 2d 241, 334 U. S. 843.) III. Courts will not substitute their judgment for that of the legislative arm of the Government as to the necessity or desirability of a statute. (*Johnson* v. *City of New York*, 274 N. Y. 411; *People* v. *Nebbia*, 262 N. Y. 259; *Schieffelin* v. *Goldsmith*, 253 N. Y. 243; *American Communications Assn.* v. *Douds*, 339 U. S. 382; *United States* v. *Petrillo*, 332 U. S. 1; *Secretary of Agric.* v. *Central Roig Refining Co.*, 338 U. S. 604.) IV. The Feinberg Law is constitutional under the " clear and present danger " test correctly applied. That test does not mean that legislative action may not be taken to deal with substantive threat to the nation's security before the danger is imminent. (*Dunne* v. *United States*, 138 F. 2d 137.) V. The Feinberg Law does not infringe in any respect upon the requirements of procedural due process. Moreover, no possible procedural problems in administration may be made the basis for attack upon the constitutionality of a statute itself. (*Minnesota ex rel. Pearson* v. *Probate Ct. of Ramsey Co.*, 309 U. S. 270; *American Power & Light Co.* v. *Securities & Exch. Comm.*, 329 U. S. 90; *United States* v. *Petrillo*, 332 U. S. 1; *Matter of Newbrand* v. *City of Yonkers*, 285 N. Y. 164.)

*Samuel M. Birnbaum* and *Solomon Kreitman* for American Legion Department of New York, *amicus curiæ*, in support of respondents' position in first above-entitled action. I. Public office employment is not a right but a privilege. (*People* v.

*Crane*, 214 N. Y. 154, 239 U. S. 195; *Heim* v. *McCall*, 214 N. Y. 629, 239 U. S. 175; *Atkin* v. *Kansas*, 191 U. S. 207.) II. The exclusion of teachers, etc., as defined in section 12-a of the Civil Service Law and section 3022 of the Education Law, from the public school system is a valid exercise of the police power of the State. (*Gitlow* v. *New York*, 268 U. S. 652; *Friedman* v. *Schwellenbach*, 65 F. Supp. 254, 159 F. 2d 22; *McAuliffe* v. *Mayor of New Bedford*, 155 Mass. 216.) III. The fact that the Communist party may have received political recognition does not immunize it from an inquiry as to whether or not it constitutes a political movement which is subversive. (*Lockheed Aircraft Corp.* v. *Superior Corp. of Los Angeles Co.*, 171 P. 2d 21 [Cal.]; *Powell* v. *Unemployment Compensation Bd. of Review*, 22 A. 2d 43 [Pa.]; *Ex parte Hennen*, 13 Pet. [U. S.] 230; *White* v. *Berry*, 171 U. S. 366; *Ex parte Endo*, 323 U. S. 283; *Hirabayashi* v. *United States*, 320 U. S. 81; *Mencher* v. *Chesley*, 297 N. Y. 94; *Reiter* v. *American Legion*, 189 Misc. 1053, 273 App. Div. 757.) IV. The legislative policy set forth in the Feinberg Law is directed against all subversive movements. Its declaration with reference to the Communist party and certain of its affiliated organizations is supported by the courts, legislative findings and reports and many existing laws. (*United States ex rel. Yokinen* v. *Commissioner of Immigration*, 57 F. 2d 707; *United States ex rel. Fortmueller* v. *Commissioner of Immigration*, 14 F. Supp. 485; *United States ex rel. Vajtauer* v. *Commissioner of Immigration*, 273 U. S. 103; *United States ex rel. Georgian* v. *Uhl*, 271 F. 676; *United States ex rel. Turner* v. *Williams*, 194 U. S. 279.)

*Arthur Garfield Hays* and *Osmond K. Fraenkel* for appellants in third above-entitled action. I. The laws and regulations interfere with freedom of speech, of the press, and of assembly. (*West Virginia State Bd. of Educ.* v. *Barnette*, 319 U. S. 624; *Stromberg* v. *California*, 283 U. S. 359; *Thomas* v. *Collins*, 323 U. S. 516; *Winters* v. *New York*, 333 U. S. 507; *Gitlow* v. *New York*, 268 U. S. 652; *United Public Workers* v. *Mitchell*, 330 U. S. 75; *United States* v. *Thayer*, 209 U. S. 39; *People* v. *Crane*, 214 N. Y. 154.) II. The presumption created by the Feinberg Law is unreasonable and denies due process of law. (*Bailey* v. *Alabama*, 219 U. S. 219; *McFarland* v. *American Sugar Refining Co.*, 241 U. S. 79; *Manley* v. *Georgia*, 279 U. S. 1; *Tot* v. *United*

*States,* 319 U. S. 463; *Pollock* v. *Williams,* 322 U. S. 4; *Mobile, J. & K. C. R. R. Co.* v. *Turnipseed,* 219 U. S. 35.)

*John P. McGrath, Corporation Counsel* (*Michael A. Castaldi, Seymour B. Quel* and *Morris Weissberg* of counsel), for respondent in third above-entitled action. I. The Feinberg Law and section 12-a of the Civil Service Law are within the constitutional power of the Legislature to regulate the efficiency and integrity of the public service and to secure the State's stability against incitements to insurrection or sedition by excluding from public service those who advocate or who are members of organizations which advocate the violent overthrow of the Government. (*United Public Workers* v. *Mitchell,* 330 U..S. 75; *People* v. *Crane,* 214 N. Y. 154; *Matter of Haslett* v. *Minetti,* 274 App. Div. 519; *Bailey* v. *Richardson,* 182 F. 2d 46; *Matter of Rabouine* v. *McNamara,* 275 App. Div. 1052; *Matter of Epstein* v. *Board of Educ. of City of N. Y.,* 162 Misc. 718, 255 App. Div. 745, 279 N. Y. 784; *Matter of McDowell* v. *Board of Educ. of City of N. Y.,* 104 Misc. 564; *People* v. *Sandstrom,* 279 N. Y. 523; *Matter of Summers,* 325 U. S. 561; *Matter of Cassidy,* 268 App. Div. 282, 296 N. Y. 926; *Ohio ex rel. Clarke* v. *Deckebach,* 274 U. S. 392; *United Steel Workers of America* v. *National Labor Relations Bd.,* 170 F. 2d 247, 339 U. S. 382.) II. The Feinberg Law and section 12-a of the Civil Service Law do not deprive plaintiffs or any other person of freedom of speech, press or assembly. (*Cox* v. *New Hampshire,* 312 U. S. 569; *United States ex rel. Turner* v. *Williams,* 194 U. S. 279; *People* v. *Gitlow,* 234 N. Y. 132, 268 U. S. 652; *Whitney* v. *California,* 274 U. S. 357; *Dunne* v. *United States,* 138 F. 2d 137; *Schenck* v. *United States,* 249 U. S. 47; *Chaplinsky* v. *New Hampshire,* 315 U. S. 568.) III. The Feinberg Law and section 12-a of the Civil Service Law do not deprive plaintiffs or any other person of liberty or property without due process of law or of the equal protection of the laws. (*American Communications Assn.* v. *Douds,* 339 U. S. 382; *Whitney* v. *California,* 274 U. S. 357; *Dunne* v. *United States,* 138 F. 2d 137; *Cole* v. *Arkansas,* 338 U. S. 345; *Bi-Metallic Investment Co.* v. *State Bd. of Equalization of Colorado,* 239 U. S. 441; *Norwegian Nitrogen Products Co.* v. *United States,* 288 U. S. 294; *Bowles* v. *Willingham,* 321 U. S. 503; *Pittsburgh Plate Glass Co.* v. *National Labor Relations Bd.,* 313 U. S. 146.) IV. The Feinberg Law and section 12-a of the Civil Service Law

are not bills of attainder or *ex post facto* laws, and do not violate the merit and fitness provisions of the New York Constitution. (*Cummings* v. *Missouri*, 4 Wall. [U. S.] 277; *McAuliffe* v. *Mayor of New Bedford*, 155 Mass. 216.)

·Lewis, J. An appeal in each of these three cases presents for our decision the constitutionality of section 3022 of the Education Law (L. 1949, ch. 360) commonly known, and hereinafter referred to as the Feinberg Law.*

At the outset the fact should be noted that prior to the enactment of the challenged statute, the Legislature had prescribed statutory standards governing within the State not only the conduct of teachers and other employees in the public school

---

* The following statement sets forth procedural steps taken prior to the present appeal to the Court of Appeals in each of the three cases under review:

*Thompson* v. *Wallin* (276 App. Div. 463) is an action by the chairman and secretary of the "Communist Party of the State of New York" in which judgment is sought declaring the Feinberg Law unconstitutional and enjoining the defendant, the Board of Regents of the State of New York, from enforcing its provisions. At Special Term judgment on the pleadings was granted to the plaintiffs (196 Misc. 686). At the Appellate Division, Third Department, the judgment entered at Special Term was reversed on the law, the complaint was dismissed and judgment on the pleadings was granted to defendants declaring the statute constitutional.

*Matter of L'Hommedieu* v. *Board of Regents* (276 App. Div. 494) is a proceeding under article 78 of the Civil Practice Act by persons now or formerly employed in the public school system of the City of New York who seek an order directing the defendants, Board of Regents and others "to disregard Chapter 360 of the Laws of 1949 [Feinberg Law], and to cease and desist from taking any steps toward the enforcement of the provisions of said law * * * ·nd to treat said enactment as a nullity * * *." At Special Term the statute was declared unconstitutional and the relief sought by the petitioners ʋas granted (196 Misc. 686). At the Appellate Division, Third Department, the order of Special Term was reversed on the law and the petition dismissed.

*Lederman* v. *Board of Education of City of New York* (276 App. Div. 527) is an action by Teachers Union, Local 555 of the United Public Workers, and others, in which judgment against the defendant Board of Education is sought declaring the Feinberg Law and section 12-a of the Civil Service Law and the rules and accompanying memorandum issued by the Commissioner of Education, be declared unconstitutional and enjoining the defendant board and its agents from taking any action based upon said statutes, rules or memorandum. At Special Term the statutes, rules and memorandum thus challenged were declared unconstitutional and the plaintiffs were granted judgment on the pleadings (196 Misc. 873). At The Appellate Division, Second Department, the judgment entered at Special Term, insofar as appealed from, was reversed on the law, the motion for judgment on the pleadings was denied, and the complaint was dismissed.

system but also those persons employed throughout the broad field of State civil service. Thus we find that by the Laws of 1917, chapter 416, there was added to the Education Law, section 3021 (formerly § 568) which provides:

" § 3021. *Removal of superintendents, teachers and employees for treasonable or seditious acts or utterances.* A person employed as superintendent of schools, teacher or employee in the public schools, in any city or school district of the state, shall be removed from such position for the utterance of any treasonable or seditious word or words or the doing of any treasonable or seditious act or acts while holding such position."

Thereafter, the Legislature, by the Laws of 1939, chapter 547, added to the Civil Service Law, section 12-a which now provides:

" 12-a. *Ineligibility.* No person shall be appointed to any office or position in the service of the state or of any civil division or city thereof, nor shall any person presently employed in any such office or position be continued in such employment, nor shall any person be employed in the public service as superintendents, principals or teachers in a public school or academy or in a state normal school or college, or any other state educational institution who: (a) By word of mouth or writing wilfully and deliberately advocates, advises or teaches the doctrine that the government of the United States or of any state or of any political subdivision thereof should be overthrown or overturned by force, violence or any unlawful means; or

" (b) Prints, publishes, edits, issues or sells, any book, paper, document or written or printed matter in any form containing or advocating, advising or teaching the doctrine that the government of the United States or of any state or of any political subdivision thereof should be overthrown by force, violence or any unlawful means, and who advocates, advises, teaches, or embraces the duty, necessity or propriety of adopting the doctrine contained therein;

" (c) Organizes or helps to organize or becomes a member of any society or group of persons which teaches or advocates that the government of the United States or of any state or of any political subdivision thereof shall be overthrown by force or violence, or by any unlawful means;

" (d) A person dismissed or declared ineligible may within four months of such dismissal or declaration of ineligibility be

entitled to petition for an order to show cause signed by a justice of the supreme court, why a hearing on such charges should not be had. Until the final judgment on said hearing is entered, the order to show cause shall stay the effect of any order of dismissal or ineligibility based on the provisions of this section. The hearing shall consist of the taking of testimony in open court with opportunity for cross-examination. The burden of sustaining the validity of the order of dismissal or ineligibility by a fair preponderance of the credible evidence shall be upon the person making such dismissal or order of ineligibility.''

It was ten years later — in 1949 — that the Legislature found within the State conditions existing which so adversely affected the public schools as to prompt the enactment of the Feinberg Law. The following statement by the Legislature — which prefaces the three operative sections of the statute — is declaratory of conditions found by the Legislature which prompted the enactment:

'' Section 1. The legislature hereby finds and declares that there is common report that members of subversive groups, and particularly of the communist party and certain of its affiliated organizations, have infiltrated into public employment in the public schools of the state. This has occurred and continues despite the existence of statutes designed to prevent the appointment to or the retention in employment in public office and particularly in the public schools of the state of members of any organization which teaches or advocates that the government of the United States or of any state or of any political subdivision thereof shall be overthrown by force or violence or by any unlawful means. The consequence of any such infiltration into the public schools is that subversive propaganda can be disseminated among children of tender years by those who teach them and to whom the children look for guidance, authority and leadership. The legislature finds that members of such groups frequently use their office or position to advocate and teach subversive doctrines. The legislature finds that members of such groups are frequently bound by oath, agreement, pledge or understanding to follow, advocate and teach a prescribed party line or group dogma or doctrine without regard to truth or free inquiry. The legislature finds that such dissemination of propaganda may be and frequently is sufficiently subtle to

escape detection in the classroom. It is difficult, therefore, to measure the menace of such infiltration in the schools by conduct in the classroom. The legislature further finds and declares that in order to protect the children in our state from such subversive influence it is essential that the laws prohibiting persons who are members of subversive groups, such as the communist party and its affiliated organizations, from obtaining or retaining employment in the public schools, be rigorously enforced. The legislature deplores the failure heretofore to prevent such infiltration which threatens dangerously to become a commonplace in our schools. To this end, the board of regents, which is charged primarily with the responsibility of supervising the public school systems in the state, should be admonished and directed to take affirmative action to meet this grave menace and to report thereon regularly to the state legislature." *

To meet conditions thus found to exist and as a preventive measure against the dissemination of subversive propaganda among children in the public schools the Legislature enacted the Feinberg Law which is now the subject of attack by the appellants as violating provisions of both the Federal and State Constitutions. The law thus challenged, which the Laws of 1949, chapter 360, added to the Education Law as section 3022, provides as follows:

" § 3022. *Elimination of subversive persons from the public school system.* 1. The board of regents shall adopt, promulgate, and enforce rules and regulations for the disqualification or removal of superintendents of schools, teachers or employees in the public schools in any city or school district of the state who violate the provisions of section three thousand twenty-one of this article or who are ineligible for appointment to or retention in any office or position in such public schools on any of the grounds set forth in section twelve-a of the civil service law and shall provide therein appropriate methods and procedure for the enforcement of such sections of this article and the civil service law.

" 2. The board of regents shall, after inquiry, and after such notice and hearing as may be appropriate, make a listing

---

* Reference to the Session Laws of 1949 will disclose that the prefatory declaration of the legislative purpose — section 1 of chapter 360 of the Laws of 1949 — is not made a part of the Education Law.

of organizations which it finds to be subversive in that they advocate, advise, teach or embrace the doctrine that the government of the United States or of any state or of any political subdivision thereof shall be overthrown or overturned by force, violence or any unlawful means, or that they advocate, advise, teach or embrace the duty, necessity or propriety of adopting any such doctrine, as set forth in section twelve-a of the civil service law. Such listings may be amended and revised from time to time. The board, in making such inquiry, may utilize any similar listings or designations promulgated by any federal agency or authority authorized by federal law, regulation or executive order, and for the purposes of such inquiry, the board may request and receive from such federal agencies or authorities any supporting material or evidence that may be made available to it. The board of regents shall provide in the rules and regulations required by subdivision one hereof that membership in any such organization included in such listing made by it shall constitute prima facie evidence of disqualification for appointment to or retention in any office or position in the public schools of the state.

" 3. The board of regents shall annually, on or before the fifteenth day of February, by separate report, render to the legislature, a full statement of measures taken by it for the enforcement of such provisions of law and to require compliance therewith. Such reports shall contain a description of surveys made by the board of regents, from time to time, as may be appropriate, to ascertain the extent to which such provisions of law have been enforced in the city and school districts of the state. * * * "

In considering the criticism which the appellants level at the Feinberg Law we may not, of course, substitute our judgment for that of the Legislature as to the wisdom or expediency of the legislation. To do so would transcend limits of our field of inquiry. (*American Communications Assn.* v. *Douds,* 339 U. S. 382, 400–401; *People* v. *Nebbia,* 262 N. Y. 259, 271.) Within those limits we examine the challenged law to determine whether, as claimed by the appellants, either the Federal or State Constitution is violated by provisions in the statute that membership in any organization, which the Board of Regents — after inquiry, notice and hearing — shall find and list as advocating the overthrow of the government by violence or unlawful means,

shall be *prima facie* evidence of disqualification for appointment or retention in the service of the public school system.

In considering the several grounds of constitutional attack we are mindful that the Feinberg Law serves to implement section 12-a of the Civil Service Law (quoted *supra*) — an implementation found by the Legislature to be expedient in view of certain existing circumstances which, as we have seen, the law-making body was careful to set forth in its declaration of legislative purpose. Such implementation, we note, prescribes a basis of *disqualification for employment* by State and municipal agencies of personnel essential to a constitutional function of the State — the education of its children. (N. Y. Const., art. XI, § 1.) We are also mindful that a public employee has no vested, proprietary right to his position which transcends the public interest or the general welfare of the community he serves. In other words public employment as a teacher is not an uninhibited privilege. True, there are limitations upon those grounds upon which public employment may be denied — for example an applicant's religion. It does not follow, however, that the statutory proscription against membership in an organization which subscribes to subversive tenets or advocates the overthrow of government by violence or unlawful means may not be a legal basis for denying an application for public employment as a teacher, or for terminating such employment for cause after inquiry, due notice and hearing.

Concerned, as we are, with the qualification for public employment in the vital field of education, we regard the law here challenged as an effort by the Legislature to insert a new strand in the mesh by which a screening process is accomplished in the selection of those who teach the State's children. Strands which serve a like purpose are found in section 3002 of the Education Law, which denies to any person the right to serve as a teacher in a public school until he or she shall have taken and subscribed an oath to support the Federal and State Constitutions; also in section 801 *id.*, which requires that in all public schools instruction shall be given in " patriotism and citizenship ". As the Legislature has authority over the discipline and efficiency of public service, we think its judgment, as expressed in the restrictive provisions of the statute under review, bears a reasonable relation to the legislative purpose to safeguard the public school system. (See *United Public Workers* v. *Mitchell,*

330 U. S. 75, 100; *American Communications Assn.* v. *Douds, supra,* p. 405; *New York ex rel. Bryant* v. *Zimmerman,* 278 U. S. 63, 72–73; *Patsone* v. *Pennsylvania,* 232 U. S. 138, 144; *Hawker* v. *New York,* 170 U. S. 189, 192–197.) Those cases stand for the legal principle which prompted Judge HOLMES — as he then was — to write in *McAuliffe* v. *Mayor of New Bedford* (155 Mass. 216, 220), the familiar statement: '' The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman.''

Passing to the appellants' claim that the disqualification for employment in the State's public school system, prescribed by section 12-a of the *Civil Service Law* as implemented by the Feinberg Law, is incompatible with freedoms guaranteed by the First Amendment to the Federal Constitution and those guaranteed by section 8 of article I of the State Constitution: We know that the freedoms which the appellants now invoke are not absolute and that they do not deprive the State of its primary right to self-preservation. We are also aware that those freedoms do not sanction unbridled license. (*People* v. *Gitlow,* 234 N. Y. 132, 137, affd. *sub nom. Gitlow* v. *New York,* 268 U. S. 652, 666–667; *Schenck* v. *United States,* 249 U. S. 47, 52.) Indeed '' \* \* \* it has long been established that those freedoms themselves are dependent upon the power of constitutional government to survive. If it is to survive it must have power to protect itself against unlawful conduct and, under some circumstances, against incitements to commit unlawful acts.'' (*American Communications Assn.* v. *Douds, supra,* p. 394.) When *People* v. *Gitlow (supra),* reached the Supreme Court of the United States the opinion there written contained the following statements which are apposite to this phase of our inquiry (pp. 666–668):

'' It is a fundamental principle, long established, that the freedom of speech and of the press which is secured by the Constitution, does not confer an absolute right to speak or publish, without responsibility, whatever one may choose, or an unrestricted and unbridled license that gives immunity for every possible use of language and prevents the punishment of those who abuse this freedom. \* \* \* Reasonably limited, it was said by Story \* \* \* this freedom is an inestimable privilege in a free government; without such limitation, it might become the scourge of the republic.

" That a State in the exercise of its police power may punish those who abuse this freedom by utterances inimical to the public welfare, tending to corrupt public morals, incite to crime, or disturb the public peace, is not open to question. * * * Thus it was held by this Court in the *Fox Case* [236 U. S. 273], that a State may punish publications advocating and encouraging a breach of its criminal laws; and, in the *Gilbert Case* [254 U. S. 325], that a State may punish utterances teaching or advocating that its citizens should not assist the United States in prosecuting or carrying on war with its public enemies.

" And, for yet more imperative reasons, a State may punish utterances endangering the foundations of organized government and *threatening its overthrow by unlawful means. These imperil its own existence as a constitutional State. Freedom of speech and press,* said Story *(supra) does not protect disturbances to the public peace or the attempt to subvert the government. It does not protect publications or teachings which tend to subvert or imperil the government or to impede or hinder it in the performance of its governmental duties.* * * * *It does not protect publications prompting the overthrow of government by force;* the punishment of those who publish articles which tend to destroy organized society being essential to the security of freedom and the stability of the State. * * * And *a State may penalize utterances which openly advocate the overthrow of the representative and constitutional form of government of the United States and the several States, by violence or other unlawful means.* * * * *In short this freedom does not deprive a State of the primary and essential right of self preservation; which, so long as human governments endure, they cannot be denied.*" (Emphasis supplied.) (See, also, *Cox* v. *New Hampshire,* 312 U. S. 569, 574; *Gilbert* v. *Minnesota,* 254 U. S. 325, 332, 339; *Schenck* v. *United States, supra,* p. 52; *Fox* v. *Washington,* 236 U. S. 273, 276–277; *Patterson* v. *Colorado,* 205 U. S. 454, 462; *United States ex rel. Turner* v. *Williams,* 194 U. S. 279, 294; *Robertson* v. *Baldwin,* 165 U. S. 275, 281; *People* v. *Most.* 171 N. Y. 423, 431.)

In the three cases now before us it was obviously within the province of the Legislature to decide in the first instance whether conditions prevailed within the State which threatened the well-being of its public school system and called for some protective measure. By enacting the Feinberg Law the Legislature has

found and has declared that conditions — referred to in the preamble to the statute in suit — did exist and were of such a character as to require the adoption of statutory measures which will protect public school children from subversive influences. "That determination must be given great weight. Every presumption is to be indulged in favor of the validity of the statute, *Mugler* v. *Kansas,* 123 U. S. 623, 661; and it may not be declared unconstitutional unless it is an arbitrary or unreasonable attempt to exercise the authority vested in the State in the public interest." (*Whitney* v. *California,* 274 U. S. 357, 371.) Paraphrasing what was written in *Gitlow* v. *New York* (268 U. S. 652, 669, *supra*), we cannot say, in view of circumstances set forth in the preamble to the statute, that the Legislature acted arbitrarily or unreasonably when, in the exercise of its judgment as to measures necessary to protect the public school system, it sought "to extinguish the spark without waiting until it has enkindled the flame * * *; but it may, in the exercise of its judgment, suppress the threatened danger in its incipiency."

Whether that danger was "clear and present" — within the rule of *Schenck* v. *United States* (*supra*, p. 52) as interpreted and applied in *American Communications Assn.* v. *Douds* (*supra*, pp. 393–400) — is answered by the Legislature's factual finding that an infiltration of members of subversive groups into employment in the public schools of the State has occurred and continues; that the consequence of such infiltration is that subversive propaganda can be disseminated among children of tender years by those who teach them and to whom the children look for guidance, authority and leadership; and that members of such groups frequently use their office or position to advocate and teach subversive doctrines.

Giving the Legislature's declaration of findings and purpose the weight to which it is entitled, we cannot say, upon the records before us, that the Feinberg Law is an unreasonable or arbitrary exercise of the police power of the State; nor can we say that it unwarrantably infringes upon any constitutional right of free speech, assembly or association.

The appellants also contend that the Feinberg Law is a bill of attainder and that, as such, it violates section 9 of article I of the Federal Constitution. As a basis for that assertion the appellants note the facts, stated in the preamble of the statute (*supra*) as findings by the Legislature, that there is common report that

members of subversive groups '' and particularly of the communist party '' have infiltrated into public employment in the public schools of the State; that members of such groups frequently use their position to advocate and teach subversive doctrines, and in consequence that subversive propaganda can be disseminated among children in attendance at the public schools.

A bill of attainder has been defined as '' * * * a legislative act which inflicts punishment without a judicial trial.'' (*Cummings* v. *Missouri,* 4 Wall. [U. S.] 277, 323.) By basing their argument upon excerpts from the preamble of the Feinberg Law appellants rely upon what is clearly a prefatory statement by which the Legislature has declared its purpose in adding new section 3022 to the Education Law. Such preamble enacts nothing, contains no directives and, as we have seen, is not made a part of the Education Law. (*Pumpelly* v. *Village of Owego,* 45 How. Prac. 219, 257.) Furthermore, a textual examination of the provisions of the Feinberg Law — section 3022 — in the light of the above-quoted definition of a bill of attainder, discloses that no organization is named in the body of the act where are prescribed the steps to be taken by the Board of Regents in listing organizations which it finds to be subversive. The text also makes provision for a hearing to be had on appropriate notice, which hearing is afforded any organization as to which the Board of Regents shall determine to institute an inquiry. It is also clear that no punishment is inflicted upon any organization which the Board of Regents — after hearing — shall find advocates the overthrow of government by force or unlawful means. (Cf. *American Communications Assn.* v. *Douds, supra,* pp. 413–414.) In the event such an organization is aggrieved by action taken by the Board of Regents under the statute, such action may be the subject of a proceeding under article 78 of the Civil Practice Act. We are thus led to conclude that the Feinberg Law has none of the legal characteristics of a bill of attainder.

There is also an assertion by the appellants that the statute is unconstitutionally vague. We find no lack of clarity in the operative clause to be found in subdivision 2 of section 3022, which directs the Board of Regents, after inquiry, notice and hearing, to list ''organizations which it finds to be subversive in that they advocate, advise, teach or embrace the doctrine that

the government of the United States or of any state or of any political subdivision thereof shall be overthrown or overturned· by force, violence or any unlawful means, or that they advocate, advise; teach or embrace the duty, necessity or propriety of adopting any such doctrine, as set forth in section twelve-a of the civil service law.''

Under subdivision 2 of the statute no organization may be listed by the Board of Regents as subversive until '' after inquiry, and after such notice and hearing as may be appropriate ''. The statute also makes it clear that, when it appears that one who seeks to establish or retain employment in the State public school system knowingly holds membership in an organization named upon any listing for which subdivision 2 of section 3022 makes provision, proof of such membership '' shall constitute prima facie evidence of disqualification '' for such employment. But, as was said in *Potts* v. *Pardee* (220 N. Y. 431, 433) : '' The presumption growing out of a *prima facie* case * * * remains only so long as there is no substantial evidence to the contrary. When that is offered the presumption disappears, and unless met by further proof there is nothing to justify a finding based solely upon it.'' Thus the phrase '' *prima facie* evidence of disqualification '', as used in the statute, imports a hearing at which one who seeks appointment to or retention in a public school position shall be afforded an opportunity to present substantial evidence contrary to the presumption sanctioned by the *prima facie* evidence for which subdivision 2 of section 3022 makes provision. Once such contrary evidence has been received, however, the official who made the order of ineligibility has thereafter the burden of sustaining the validity of that order by a fair preponderance of the evidence. (Civil Service Law, § 12-a, subd. [d].) Should an order of ineligibility then issue, the party aggrieved thereby may avail himself of the provisions for review prescribed by the section of the statute last cited above. In that view there here arises no question of procedural due process. Reading the statute in that way, as we do, we cannot say there is no rational relation between the legislative findings which prompted the enactment of the Feinberg Law and the measures prescribed therein to safeguard the public school system of the State.

We have seen that the Legislature and administrative agencies have authority over the discipline and efficiency of the public

service. When in its judgment and discretion the Legislature finds acts by public employees which threaten the integrity and competency of a governmental service such as the public school system, legislation adequate to maintain the usefulness of the service affected is necessarily required to forestall such danger. Believing the Feinberg Law to be the Legislature's answer to such a need, we find in that statute no restriction which exceeds the Legislature's constitutional power.

The judgments and order should be affirmed, with costs.

LOUGHRAN, Ch. J., CONWAY, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Judgment accordingly.

