THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HAYWARD BELL, CHARLES HENRY, WILLIE YOUNG and GEORGE GILL, Appellants.

County Court, Nassau County, February 11, 1953.

*Jawn A. Sandifer* for Hayward Bell and others, appellants.

*Emanuel Redfield* for Charles Henry, appellant.

*Frank A. Gulotta, District Attorney (Henry Meyer* of counsel), for respondent.

LENT, J. This is an appeal from a judgment of the City Court of the City of Long Beach convicting the defendants of violating subdivision 2 of section 1990-a of the Penal Law.

Upon their conviction each defendant was sentenced to pay a fine of $5 or to serve two days in the county jail. The fines were paid.

Subdivision 2 of section 1990-a of the Penal Law, reads as follows: " Any person who loiters about any toilet, station or station platform of a subway or elevated railway or of a railroad, or who is found sleeping therein or thereon and who is unable to give satisfactory explanation of his presence is guilty of an offense."

The briefs submitted by the appellants in support of this appeal raise constitutional questions by challenging the validity of the quoted statute as violative on its face of the due process and equal protection clauses of the Federal and State Constitutions and the right of freedom of assembly guaranteed by both (U. S. Const., Amdt. XIV, § 1; N. Y. Const., art. I, § 6, U. S. Const., art. I; N. Y. Const., art. I, § 11).

While the supporting arguments squarely raise the constitutional issue of claimed repugnance to the due process and freedom of assembly provisions as allegedly apparent on the face of the statute, whatever arguments are addressed to the contention that the defendants were denied equal protection flow from accusations that the defendants were selected for prosecution " for the reason of the color of their skin " and that the case has " racial discrimination overtones ".

There is nothing in the record of the trial below which remotely points to a justification for these serious and startling charges. On the contrary, it is apparent that the defendants received a fair and impartial trial. So consumed have counsel become with indignation over this fancied issue, that even in their proper presentation of the constitutional questions by which they seek a declaration of the statute's invalidity, they have overlooked the basic, relatively simple and primary question ever present in the review of any record of the determination of a lower court, i.e., " Did the People prove a prima facie case? "

If that question should be answered in the affirmative the law's constitutionality will be explored, but should it be answered in the negative, necessity no longer exists for a determination of the statute's validity. This is not by way of begging a possibly complex question but from a natural reluctance to take any action which may result in striking down a solemn legislative enactment and a desire to preserve to a salutary statute its presumption of constitutionality. (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 150; *Thomp-*

*son* v. *Wallin,* 276 App. Div. 463, affd. 301 N. Y. 476. affd. 342 U. S. 485.)

What then is the evidence against these defendants by which the People contend that they have established beyond a reasonable doubt that the defendants " loitered about " the Long Beach station of the Long Island Rail Road? In substance it discloses that the defendants were in a group standing around a radiator; that they had remained there for a period of about thirty-five minutes prior to their arrest; that during this period they were under constant surveillance by the police; that such observation was the result of a complaint made to the police by the stationmaster about persons other than these defendants and that when asked to give an explanation of their presence in the station, the defendants said that they had just arrived, which statement was false and was known to the police to be false.

In finding the defendants guilty of " loitering about " the station without being able to give satisfactory explanation of their presence, it is apparent that the court below viewed the statute as condemning any act which could be said to constitute " loitering " as the term is generally employed in the ordinary speech of mankind, i.e., lingering, tarrying, spending time idly, or delaying. Such a construction failed to give proper significance to the modification of " loitering " by the addition of the word " about " or the legislative intention reflected in the context of the entire statute. One of the difficulties in the interpretation of statutes is that the English language permits a single word to have two or more significations. Which of two different meanings is to be given a word must be determined from the context of the statute — its purpose and spirit. There is another connotation for the word " loiter " beside its general usage noted above. Webster points it out and specifically labels it as a second connotation (Webster's International Dictionary [1931 ed.], p. 1271), defining it as " to wander about as an idle vagrant ".

Giving the phrase " loiter about " this signification and aided by the remaining verbiage of the statute, the legislative intent becomes clear. It automatically excludes from the condemnation of the statute those who are guilty of mere lassitude or indolence, those overcome by a normal weariness, or indeed those of our citizens who consider themselves students of human nature and who use station waiting rooms as their laboratory. It is evident that the Legislature by the enactment of this statute sought to protect the decent citizens of the

community from contact with those sordid individuals who infest our stations such as the dirty, disheveled, besotted character whose state is but a step short of intoxication or vagrancy, the secretive and furtive homosexual or degenerate whose motive is plain but whose acts may not constitute a violation of the misdemeanor or felony statutes, or the boisterous, noisy cutup whose presence and manner are offensive but whose activities do not constitute disorderly conduct under the statute.

The actions of these defendants were not shown to come within any of these or parallel categories.

Judgment of conviction reversed and fine remitted.