In the Matter of CHARLES W. HUGHES, Respondent, against BOARD OF HIGHER EDUCATION OF THE CITY OF NEW YORK, Appellant.

Argued October 13, 1955; decided November 23, 1955.

*Peter Campbell Brown, Corporation Counsel (Daniel T. Scannell, Seymour B. Quel and Helen R. Cassidy of counsel), for appellant.* The Legislature, in enacting section 12-a of the Civil Service Law, gave legislative recognition to the fact that certain conduct constitutes disloyalty to the State, and guaranteed anyone accused of such conduct a trial, either administrative or judicial, but not both. (*Matter of Fusco* v. *Moses,* 304 N. Y. 424; *Thompson* v. *Wallin,* 301 N. Y. 476; *Adler* v. *Board of Educ.,* 342 U. S. 485; *Matter of Rabouine* v. *McNamara,* 301 N. Y. 785; *Matter of Board of Higher Educ.* v. *Cole,* 236 App. Div. 777, 288 N. Y. 607; *Matter of Levitch* v. *Board of Educ.,* 243 N. Y. 373; *Matter of McDowell* v. *Board of Educ.,* 104 Misc. 564; *Matter of Chapin* v. *Board of Educ.,* 291 N. Y. 241; *Matter of Ross* v. *Wilson,* 308 N. Y. 605; *Matter of Board of Educ. of Central School Dist. No. 1* v. *Allen,* 283 App. Div. 376.)

*Osmond K. Fraenkel* for respondent. I. Petitioner was dismissed under section 12-a of the Civil Service Law. II. Petitioner has an absolute right to a hearing in court. (*Ng Fung Ho* v. *White,* 259 U. S. 276; *United States* v. *Rumely,* 345 U. S. 41; *Peters* v. *Hobby,* 349 U. S. 331; *Thompson* v. *Wallin,* 301 N. Y. 476; *Adler* v. *Board of Educ.,* 342 U. S. 485; *Matter of L'Hommedieu* v. *Board of Regents,* 276 App. Div. 494.)

DESMOND, J. Petitioner, an associate professor at Hunter College, which is maintained by the City of New York, was in 1954 (with other faculty members whose cases are not before us on this appeal) brought to trial before a trial committee of appellant Board of Higher Education of the City of New York. The charges, omitting one on which he was not found guilty, were two. The first charge was that petitioner, from 1938, had been a member of the Communist party which in proceedings taken pursuant to the " Feinberg Law " (Education Law, § 3022) and the Rules of the State Board of Regents had been listed in 1953 by the Board of Regents as a subversive organization within the meaning of section 12-a of the State Civil Service Law. The second charge against petitioner accused him of failing, by refusal to answer questions, to co-operate in an investigation by the Board of Higher Education into past or present membership of municipal college staff members in the Communist party or other subversive organizations. The board's trial committee, after hearings at which testimony was taken and at which petitioner was represented by counsel, recommended that petitioner be found guilty on all three charges and dismissed. The board itself, after further hearings, found petitioner guilty on the two charges above summarized, and ordered his immediate dismissal from the college faculty.

To review his dismissal on the second, or non-co-operation charge, petitioner appealed to the State Commissioner of Education, pursuant to section 310 of the Education Law. As to his dismissal on the first, or Communist party membership charge, however, he brought the present proceeding to obtain a *de novo* trial in open court before the Supreme Court of this State. To such a trial, he asserts, he is entitled under subdivision (d) of section 12-a of the Civil Service Law. The sole question before us on this appeal is as to whether a public school or college teacher of this State, dismissed because of Communist party membership, has a right after dismissal to a court trial of the same charges. Conformably to *Thompson* v. *Wallin* (301 N. Y. 476) we answer that question in the affirmative.

The several statutes which must be read together to solve this problem have been so carefully described and analyzed in *Thompson* v. *Wallin* (*supra*) and in the United States Supreme

Court's affirmance thereof (*Adler* v. *Board of Educ.*, 342 U. S. 485) that a much briefer statement thereof will suffice here. In 1917, section 3021 of the Education Law was enacted (as § 568) to authorize the removal of public school teachers for treasonable or seditious acts or utterances. The 1939 legislative session produced section 12-a of the Civil Service Law, applicable to all public employees including teachers and forbidding the appointment or continuance in service of any treasonable or seditious employee. It is on subdivision (d) of section 12-a that petitioner relies to support his demand here for a trial *de novo*. That subdivision reads thus: " (d) A person dismissed or declared ineligible may within four months of such dismissal or declaration of ineligibility be entitled to petition for an order to show cause signed by a justice of the supreme court, why a hearing on such charges should not be had. Until the final judgment on said hearing is entered, the order to show cause shall stay the effect of any order of dismissal or ineligibility based on the provisions of this section. The hearing shall consist of the taking of testimony in open court with opportunity for cross-examination. The burden of sustaining the validity of the order of dismissal or ineligibility by a fair preponderance of the credible evidence shall be upon the person making such dismissal or order of ineligibility." 1949 brought the " Feinberg Law " (Education Law, § 3022, *supra*) which, obviously to implement the other two statutes we have discussed, set up a system whereby the State Board of Regents was required after hearings to list subversive organizations. Another part of the Feinberg Law directed the Board of Regents to adopt and enforce rules for the disqualification of teachers (and others) who violate section 3021 of the Education Law (*supra*) or who are ineligible under section 12-a of the Civil Service Law (*supra*). Membership in any listed subversive organization is made, by the Feinberg Law, prima facie evidence of disqualification for employment in the public school system.

Thus, section 12-a as well as section 3021 dealt with the removal of seditious teachers. Section 12-a forbade the employment or continuance in service of any public servant, including a teacher, who advocated the overthrow of our National Govern-

ment by force. And section 12-a in the plain words above quoted from its subdivision (d) set up an open court hearing for "A person dismissed or declared ineligible" on such grounds. There is no escape from the conclusion that such a trial is available to a teacher so dismissed, and we so held in *Thompson* v. *Wallin* (301 N. Y. 476, *supra*). In our *Thompson* opinion (p. 494, *supra*), after analyzing all the administrative procedures provided by the several statutes to bring about a teacher's dismissal, we continued thus: "Should an order of ineligibility then issue, the party aggrieved thereby may avail himself of the provisions for review prescribed by the section of the statute last cited above". The "section of the statute last cited above" was 12-a (subd. [d]) of the Civil Service Law (*supra*) which provides an open court *de novo* trial after dismissal.

When *Thompson* v. *Wallin* came to the United States Supreme Court (*sub nom. Adler* v. *Board of Educ.*, 342 U. S. 485, *supra*), the majority opinion in that court quoted verbatim (p. 495) our *Thompson* opinion language above quoted. Thus, our construction of the *de novo* trial provision of section 12-a as applicable to Feinberg Law removals was accepted by the Supreme Court as being part of the protections provided by this State for teachers accused of communism. Indeed, the State Board of Regents in its brief filed with us had carefully pointed out that "A teacher found disqualified pursuant to the Feinberg Law" had "an election of remedies", consisting of "several methods of appeal or review from which to choose". Then the brief listed three such remedies and one of them was that of a court trial under subdivision (d) of section 12-a. When the case later went to the Supreme Court, the State's brief (as *amicus curiæ*) analyzing our opinion told the highest court that the construction of the statute by our court was binding on the Supreme Court, including our holding that the Feinberg Law afforded to any dismissed teacher a section 12-a (subd. [d]), court review. Indeed, the brief filed with us by the present respondent (Board of Higher Education) in a case heard with *Thompson* v. *Wallin* (*supra*) expresses no more than a doubt that the trial *de novo* procedure of section 12-a is available after Feinberg Law dismissals. The Special Term holding in that associated case (*Lederman* v. *Board of Educ.*, 196 Misc. 873; see pp. 882, 883)

similarly expressed uncertainty as to whether subdivision (d) of section 12-a of the Civil Service Law could be used to review a teacher's Feinberg Law dismissal. We removed that uncertainty in our *Thompson* v. *Wallin* opinion (*supra*).

The board's arguments on this appeal boil down to this: that the Legislature, as to such a dismissal where other statutes mandate a full administrative hearing and allow an article 78 of the Civil Practice Act court review or, in the alternative, an appeal to the State Commissioner of Education, could not rationally have intended that, besides those choices, a dismissed teacher could choose to have a trial *de novo* in court. (But there are other situations where a trial *de novo* is a right; see *Staten Is. Edison Corp.* v. *Maltbie*, 296 N. Y. 374; Justice Ct. Act, § 442.) The only, but sufficient, answer is that subdivision (d) of section 12-a (*supra*) provides such a choice. It is cumbersome and unusual to allow such a second trial but the Legislature may have had its reasons for providing so extreme a measure of protection. The majority opinion in the Appellate Division suggests this as one such possible reason: that the Legislature realized that a Feinberg Law dismissal would, because of certain language in that statute, result in not only a teacher's dismissal but in his permanent ineligibility for any public position in this State. We do not think it necessary or appropriate at this time to decide whether or not such a result follows such a dismissal. We do point out that, according to the very language of these charges and the discussions of them at the board's hearings, the charge which petitioner wishes now to try in the courts was based on both section 12-a and the Feinberg Law. That necessarily brought into the picture subdivision (d) of section 12-a. It is no answer to this that the detailed procedures followed by the board were those described in subdivision 10 of section 6206 of the Education Law and in the board's own by-laws. The board's right to dismiss this teacher, as distinguished from pure procedure, was necessarily grounded on both the Feinberg Law and section 12-a of the Civil Service Law.

In the board's brief in this court it is suggested, rather than argued, that the peculiar phraseology of subdivision (d) of section 12-a — " may * * * be entitled to petition " the

Supreme Court, etc.— means something less than an absolute right to go into the Supreme Court. We do not accept such a construction. It not only opposes the construction announced by us in *Thompson* v. *Wallin* (*supra*) but would make the subdivision useless if not meaningless.

The order appealed from should be affirmed, with costs, and the question certified answered in the negative.

CONWAY, Ch. J., FULD, FROESSEL and VAN VOORHIS, JJ., concur; DYE and BURKE, JJ., taking no part.

Order affirmed, etc.