Harry B. Frank, J.
Respondents move for judgment dismissing the petition upon the ground that the proceeding was not commenced within the time limited by law with respect to the determination made as to final key answers to part I of the written test, Captain, New York City Police Department, and was prematurely commenced with respect to the determination as to petitioners’ claims of manifest error or mistake in grading their answers to the questions on part II of the written test and further upon the ground that the petition fails to set forth facts sufficient to warrant the relief sought with respect to the manner in which part II of the test was rated.
The subject examination was taken by Lieutenants in the Police Department. The principal objections are directed to the key answers as to 11 of the 100 multiple choice questions, part I, and the answers to six essay questions, part II. The examination was held on April 11,1964.
The grounds for review as to the key answers, part I, are based on Matter of Acosta v. Lang (13 N Y 2d 1079). The question is whether judicial review as to that was timely sought. All but two of the petitioners passed part I and by this review they seek to better the mark given them and thus to improve their position on any list. On April 20, 1964, Personnel published tentative key answers to the questions of part I. Subsequently, and in pursuance of established procedures, protests were filed to many of the questions of part I. On September 29,1964, Personnel determined the final key answers for part I. Beginning on October 15, 1964, and for three days thereafter, the final key answers for part I were published in the City Record. On February 11,1965, Personnel mailed failure notices. *738 It is then alleged by petitioners that each of them became entitled to examine his answer paper only after receipt of the failure notice and, accordingly, the first time that any petitioner could see his answer paper was after February 11, 1965. Thus, petitioners argue, the time to move began to run not earlier than February 11, 1965. This proceeding was commenced on June 4, 1965. Respondents urge the time commenced to run with publication of the final list of key answers on October 15, 1964.
General Examination Regulation E 18 of the New York City Civil Service Commission provides procedures with respect to tentative and final key answers. Thus, time is fixed for filing protests, the contents thereof, publication after consideration of protests of final key answers in the City Record, and by subdivision (g) of the regulation: “ The publications and postings hereinbefore set forth shall constitute public notice by the department of personnel to all interested persons of its determination thereon.”
The issue arose in Matter of O’Neill v. Schechter (5 N Y 2d 548) on which both parties rely. There, the Court of Appeals stated (p. 551): “ Assuming a party knows or should know he is aggrieved by the commission’s determination of the correct answers to a competitive examination, we would agree with the lower courts that ‘ the act of finality which sets the period of limitation running is the adoption and promulgation, by publication, of final key answers; such adoption is the official response to any protest theretofore filed to a tentative key answer.’ ” However, the court also observed (p. 554): The four-month Statute of Limitations cannot fairly be said to have commenced running against petitioners on the date the final answers were published, unless they knew or should have known they were aggrieved by that determination. It is axiomatic that ‘ Administrative procedure will be reviewed only at the instance of a person allegedly aggrieved thereby ’ (Lederman v. Board of Educ., 276 App. Div. 527, 531, affd. 301 N. Y. 476, 493). As the court pointed out in Matter of Abramson v. Commissioner of Educ. (1 A D 2d 366, 371) petitioners ‘ had no reason to institute a judicial proceeding to challenge [respondents’] decision until they knew that they were aggrieved by it ’”.
It appears that in Matter of O’Neill (supra) the instructions issued to the candidates there concerning the necessity for making copies of their answers for protest purposes were appended at the end of the test paper and therefore it was said the “ petitioners could not reasonably have been expected to read the directions for protesting answers until it was too late ”. How *739 ever, in this instance, the instructions were placed in a notice on page one of the booklet, as follows: “ You should, for future reference, make a record of your answers in the question booklet with you when you leave. This is essential in the event you decide to protest the tentative key answers since answer papers are not available until after they have been rated.”
Petitioners argue that no particular pressure was put upon them to make a record of the answers, that to do so is inconvenient and would place undue pressure and confusion upon them, that they could not know whether they are aggrieved until after notice of failure and access to their answers by inspection and until they knew whether a conversion formula would be used. It is alleged that it was used without notice to the petitioners upon a finding that too few candidates otherwise would pass part I. Nevertheless, the test for discovery of grievance was satisfied by removal of the instructions from the end of the test paper, which the Court of Appeals held in O’Neill was inadequate because too late, to the head of the test paper and on page one thereof, which, is quite timely. Such record, when set against the tentative and final list of key answers, was sufficient to apprise the petitioners of any grievance and to start the time running on official and final publication. It was so held in Matter of Bergfeldt (Lang), (N. Y. L. J., Nov. 1, 1965, p. 17, col. 4).
Within two months of receipt of failure notices petitioners filed protests as to the key answers, part II. A list of successful candidates was published March 26, 1965, though not promulgated. It contained 127 names. On March 31, 1965 and thereafter, 65 provisional appointments to the position of Captain were made. This proceeding was commenced June 4,1965. The motion to dismiss is made by notice of December 30, 1965. In the interim, there were several adjournments at the request, it is stated, of the respondents. By publication of a list, petitioners argue that at least de facto their protests as to part II have been determined. Petitioners’ motion was returnable originally on June 8, 1965. They allege that request was made for adjournment to June 28, with the understanding that answering papers would be served on June 23,1965. Further adjournment was requested to September 10, 1965 to afford respondents ample time to review petitioners’ answers to part II. Further adjournment was given to October 8, 1965 on respondents’ request, upon the basis of need for further time. There was similar adjournment to November 9, giving additional alleged necessary time for review procedure. It is then alleged that petitioners’ attorney, in a conversation with a representative *740 of the respondents on October 2.9, 1965, was advised that the review of petitioners’ answers to part II had been completed and no errors had been found, and a firm return date was fixed. However, not until the making of the cross motion, by notice dated December 30, 1965, were the petitioners advised that the protests had not yet been determined. It is not now revealed what the status of the administrative review is or when it may be completed. It is stated only that a determination has not been made.
The rule for necessity of completion of administrative review and judicial appeal from that determination is well settled. However, the question is fairly raised whether the outcome of the protests in relation to part II is not already known and had been made known. The protests were filed not later than April 11, 1965. Also fairly raised is the question whether in the circumstances here petitioners’ remedy is adequate if they must await a further and indeterminate time for determination of the protests.
The administrative review process has been too long and productive of hardship in relation to the time of commencement of this proceeding, the requested adjournments, the publication of a list, and the making of provisional appointments therefrom and in light of all the facts and circumstances thereof the question of prematurity should be decided upon full submission and disclosure.
Respondents urge in support of claimed insufficiency that the allegations in paragraphs 31 and 32 of the petition are made on information and belief and are conclusory. Those allegations are not supported by petitioners in their opposing affidavits or in their brief. It is alleged in those paragraphs, upon information and belief, that in the process of rating the answers, part II, Personnel predetermined the number of candidates to be permitted to attain a passing score on the written test, part II, and, therefore, the test was not rated solely on the basis of correctness of a candidate’s answer but on a basis intended and calculated to produce a limited, fixed and predetermined number of successful candidates and that different standards and criteria were employed in rating the answers of different candidates, so as to cause subjective and inconsistent grading and rating of such answers.
The motion to dismiss is granted as to the objections raised to key answers, part I, upon the ground that maintenance of the proceeding as to that is time-barred. The motion is granted also striking out the claim of petitioners as set out in paragraphs *741 31 and 32 of the petition. The motion is denied to the extent the claim of the petitioners rests on part II of the examination. The main motion is restored to the calendar of Special Term, Part I, for March 8,1966.