Van Voorhis, J.
(dissenting). The decision about to be rendered seems to me to constitute usurpation by the courts of the powers of the Legislature or the people through constitutional amendment. Prescribing the qualifications of public officers has long been regarded as a function of the Legislature. It was written by Justice William F. Dowling at Special Term in Matter of Becraft v. Strobel (158 Misc. 844, 850, affd. without opn. 248 App. Div. 810, affd. 274 N. Y. 577) :
‘ ‘ Section 23 of the Town Law is not obnoxious to either the State or Federal Constitutions. The Legislature ‘ may, in the exercise of its judgment for the public good, limit the number from whom the elector may select, for thus to legislate is within the general and sovereign power of legislation which it constitutionally possesses. ’ (People ex rel. Furman v. Clute, 50 N. Y. 451, 460; People ex rel. Devery v. Coler, 173 id. 103, 118; Rogers v. Common Council of Buffalo, 123 id. 173, 183, 185; Scott v. Village of Saratoga Springs, 131 App. Div. 347; affd., 199 N. Y. 178.)
*423 ‘1 The purpose of section 23 of the Town Law is to secure for the position of supervisor in the various towns of the State 1 persons who are interested and by reason of their interest may be expected to be careful and economical in administering the affairs of the village.’ (People ex rel. Worth v. Kanar, 80 Misc. 552, 555, citing Jewell v. Mohr, 136 N. Y. Supp. 273.) A property qualification is not a test within the meaning of article 13, section 1, of the Constitution of the State of New York. Under section 23 of the Town Law, each owner of record of real property in any town of the State 1 stands on an equal footing with others of his class, all of whom are eligible. ’ This is all the Constitution guarantees. (Rogers v. Common Council of Buffalo, supra, p. 183.) ”
To the cases cited may be added People ex rel. Smith v. Fisher (24 Wend. 215); People ex rel. Henderson v. Snedeker (14 N. Y. 52); Matter of L’Hommedieu v. Board of Regents (276 App. Div. 494, 507, affd. 301 N. Y. 476, affd. sub nom. Adler v. Board of Educ., 342 U. S. 485); Matter of Blaikie v. Power (13 N Y 2d 134, opp. dsmd. 375 U. S. 439).
Although it is true, of course, that the Legislature cannot arbitrarily exclude any class of citizens from the right to hold public office, the authorities cited uphold the power of the Legislature to prescribe qualifications of public officers under a wide variety of circumstances over a period of more than 125 years. The constitutionality of these same sections of the Town Law was sustained as recently as 1937. The proposed New York State Constitution approved by the Constitutional Convention held this year (art. VII, § 1, subd. b) would repeal these property qualifications in sections 23 and 23-a of the Town Law, but the Convention would not have included that provision in the proposed Constitution if it had believed that these sections were already outlawed by existing provisions of the United States and New York State Constitutions.
Home ownership by the citizens of a community has, from time out of mind, been regarded as an important stabilizing factor. Government has recognized and endeavored to foster that kind of stability through the instrumentality of the Home Owners Loan Corporation and similar activities. This is especially true in rural and suburban communities, governed by the Town Law,,, contrary to what the majority opinion says about *424 people in towns being apartment house dwellers. Taxes upon real property continue to be almost exclusively the source of the revenues that are raised in towns for their own town purposes. It was neither unreasonable nor arbitrary for the Legislature to have determined during these many years, whether in towns or school districts (cf. Education Law, § 2012), that town officers would be more responsible in the administration of town affairs if they, also, were taxpayers.
The statement in the majority opinion that ‘[1] Ownership of real property does not render one more interested in, or devoted to, the concerns of the town ’ ’, which is contrary to the views of many social scientists and others qualified to judge, sets up the opinion of the court in contrast to the opinion of the Legislature. It is subject to the same criticism made by Justices Holmes, Brandéis and Fbankeurteb of the courts of an earlier day for imposing their own views of policy in fields within which the legislative body is constitutionally competent to act. This is not the less true because the policies advocated by the court today are different from those of the earlier Judges who were criticized as judicial activists.
There comes a point, of course, where the Congress or a State Legislature may exceed its powers as limited by the Constitution of the State or nation. For so long, however, as there is room for reasonable difference of legislative opinion, the courts may not intervene. One may consider that the property qualifications of public officers in towns or of electors in school districts should be abolished, either by act of the Legislature or by State constitutional change. The tide, today, is running strongly against responsibility in government, and the idea is not favored in certain circles that taxpayers should have any control over the expenditures of their money. If the change is to be made in these sections of the Town Law toward what is regarded as more democratic local government, it should be done by democratic methods through the adoption by the vote of the electorate of a new constitutional provision or through act of the Legislature at which all of the electors have an opportunity to make their influence felt through their elected representatives. The State Legislature has been reapportioned, and any change in the public policy by the Legislature would be enacted by universal suffrage untrammeled by any property *425 limitations. The reapportionment cases, it seems to me, have nothing to do with this case. It should not be accomplished by the undemocratic method of giving effect to the policy views of the judiciary. The end does not justify the means.
I dissent and vote to affirm the trial court.
Judges Burke, Bergan, Keating and Breitel concur with Chief Judge Fuld ; Judge Van Voorhis dissents and votes to affirm in a separate opinion in which Judge Scileppi concurs.
Judgment reversed, with costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.