In the Matter of CHARLES W. HUGHES, Appellant, against BOARD OF HIGHER EDUCATION OF THE CITY OF NEW YORK, Respondent.

First Department, June 7, 1955.

*Osmond K. Fraenkel* for appellant.

*Michael A. Castaldi* of counsel (*Seymour B. Quel* with him on the brief; *Peter Campbell Brown, Corporation Counsel,* attorney), for respondent.

Breitel, J. Petitioner Hughes, a dismissed professor at Hunter College, an institution of higher education maintained by the City of New York under the jurisdiction of the board of higher education, appeals from an order at Special Term denying his application for a hearing pursuant to the provisions of section 12-a of the Civil Service Law. The order should be reversed and the petitioner granted a hearing in accordance with the provisions of that section.

Petitioner, during the years 1939 to 1941 or 1942, while a teacher at Hunter College, was a member of the Communist party. This he admits. He claims, however, that in 1941 or 1942, in good faith, he ceased to be a member of the party. He also claims that at no time during his membership was he aware of the subversive character or of the activities of the Communist party, or that he did or was required to engage in any subversive activities. Nevertheless, he contends that he was dismissed for present membership in the party.

Section 12-a of the Civil Service Law, enacted in 1939, provides:

" No person shall be appointed to any office or position in the service of the state or of any civil division or city thereof, nor shall any person presently employed in any such office or position be continued in such employment, *nor shall any person be employed in the public service as superintendents, principals or teachers in a public school or academy or in a state normal school or college, or any other state educational institution who:* \* \* \*

" (c) Organizes or helps to organize or becomes a member of any society or group of persons which teaches or advocates that the government of the United States or of any state or of any political subdivision thereof shall be overthrown by force or violence, or by any unlawful means;

" (d) A person dismissed or declared ineligible may within four months of such dismissal or declaration of ineligibility be entitled to petition for an order to show cause signed by a justice of the supreme court, why a hearing on such charges should not be had. Until the final judgment on said hearing is entered, the order to show cause shall stay the effect of any order of dismissal or ineligibility based on the provisions of this section. The hearing shall consist of the taking of testimony in open court with opportunity for cross-examination. The burden of sustaining the validity of the order of dismissal or ineligibility by a fair preponderance of the credible evidence shall be upon the person making such dismissal or order of ineligibility". (L. 1939, ch. 547, as amd. by L. 1940, ch. 564.) (Emphasis supplied.)

Petitioner Hughes, together with two fellow professors, was brought to trial on charges preferred by a special committee of the board of higher education. The charges were tried by a trial committee consisting of the Honorable Charles H. Tuttle, as chairman, John E. Conboy and Mary S. Ingraham. The

charges were sustained and Hughes was dismissed. It is on the basis of this dismissal that this judicial proceeding was brought.

Hughes was charged with neglect of duty and conduct unbecoming a member of the staff. The specifications under these charges were as follows:

In Specification I it was charged that Hughes both became a member of the Communist party in 1938 and continued thereafter to be a member of the Communist party; that at all times during the period of his membership in that party, it advocated the overthrow of the Government by force and violence, " and exacts from its members the duty and obligation to adhere to a body of doctrines, practices and principles that are incompatible with, and antagonistic to the ideals, purposes, and established standards of conduct of a member of the college staffs under the jurisdiction of the Board of Higher Education". Specific reference was made to section 12-a of the Civil Service Law and the Feinberg Law (L. 1949, ch. 360, as amd. by L. 1953, ch. 681).

Specification II charged Hughes with failing to co-operate in answering questions with respect to knowledge of the activities and members of a Communist party group, particularly one at Hunter College.

Specification III charged Hughes, together with the other two professors, of having entered into a common plan to violate the board's resolution of September 28, 1953. This specification need not be considered, for Hughes' dismissal was predicated only on findings by the trial committee that he was guilty under Specifications I and II.

Because the overall charge relates to neglect of duty and conduct unbecoming a member of the staff, respondent board of higher education contends that Hughes was dismissed, not under section 12-a of the Civil Service Law, but under section 6206 of the Education Law (often referred to as the " Tenure Law"). It is therefore further argued that Hughes is not entitled to avail himself of the procedure provided in section 12-a of the Civil Service Law.

The first issue, therefore, with which the court is confronted is whether section 12-a of the Civil Service Law is applicable to the dismissal of Hughes. If it is, he was entitled to make the application under that section for a judicial hearing. If, on the other hand, Hughes' dismissal was pursuant to section 6206 of the Education Law, presumably without relation to section

12-a of the Civil Service Law, then Hughes' remedies are said to be exclusively administrative, including an appeal to the State Commissioner of Education, and subject only to review under article 78 of the Civil Practice Act.

Subdivision 10 of section 6206 of the Education Law provides that persons having tenure under the section may be removed for one or more of the following reasons: " a. Incompetent or inefficient service; b. neglect of duty; c. physical or mental incapacity; d. conduct unbecoming a member of the staff ".

Concededly, Hughes was subject to the section, and the general charge was framed in its terms. Nevertheless, it is concluded that Hughes was not dismissed exclusively under the provisions of section 6206, but also under section 12-a of the Civil Service Law.

While the overall charges were in terms listed in section 6206, Specification I expressly referred to and grounded the alleged misconduct on section 12-a. Moreover, the acts described are those proscribed in section 12-a. The trial committee so viewed the specification. At page 4 of its report it said as follows: " Specification I also called attention to the enactment by the Legislature in 1939 of Section 12-a of the Civil Service Law and in 1949 of the Feinberg Law; to the adoption by the Board of Regents on July 15, 1949 of certain Rules (including Subdivision 2 of Section 254 thereof) in pursuance of the Feinberg Law; and to the Regents' subsequent listing on September 24, 1953, of the Communist Party of the United States of America, and the Communist Party of the State of New York, ' as subversive organizations within the meaning of Section 12-a of the Civil Service Law ' ".

At page 5 of the trial committee report it appears that the answer of Hughes to the overall charge and specifications joined issue under the grounds for dismissal set forth in section 12-a. In its findings, so denominated, with respect to Specification I, the trial committee rested upon the language and violations set forth in that section. It concluded by saying, at page 100 of its report, that, referring to Hughes: " His conduct was *also* unbecoming a member of the staff within the meaning of the Tenure Law and Section 12-a of the Civil Service Law; and constituted statutory disqualification for continued employment as defined in Section 12-a of the Civil Service Law " (emphasis supplied).

A further circumstance compels the conclusion that Hughes was tried under section 12-a, as well as section 6206 of the

Education Law. He moved preliminarily to dismiss the charges because procedural rules of the board of higher education applicable to charges under section 6206 of the Education Law had not been followed. The motion was denied on the ground that the Feinberg Law (referring to section 3022 of the Education Law), in conjunction with section 12-a of the Civil Service Law, mandated on the board of higher education proceedings for the dismissal and declaration of ineligibility of one, who, like Hughes, was charged with membership in a subversive organization.

The conclusion that Hughes was also tried under section 12-a becomes even clearer when it is noted that the trial committee relied on the Feinberg Law for the presumptions contained therein. These presumptions rise from the listing of the Communist party as a subversive organization, and from the stated rule that "membership in any such organization included in such listing * * * shall constitute prima facie evidence of disqualification for appointment to or retention in any office or position in the public schools of the state." (§ 3022.) The Feinberg Law was enacted to implement section 12-a, insofar as personnel in public schools and colleges is concerned. (*Thompson* v. *Wallin,* 301 N. Y. 476; *Adler* v. *Board of Educ.,* 342 U. S. 485.) The presumptions were used in Hughes' case and were evidently considered necessary.

It is important to observe that neither the Feinberg Law (Education Law, § 3022) nor the Tenure Law (Education Law, § 6206) define substantively, subversive organizations, membership in which constitutes a disqualification for a teaching position. That definition is found only in section 12-a of the Civil Service Law. The historical reason is that before the adoption of section 12-a it was debatable whether political advocacy, however subversive — or even membership in a political organization which advocated such subversive viewpoint — without a showing of an overt act of subversion committed by the individual, constituted valid ground for dismissal or declaration of ineligibility. It was even debatable whether such subversive advocacy or membership could be considered unbecoming conduct (but see Penal Law, § 161, the model for § 12-a). That is why the Legislature expressly included educational personnel in section 12-a. It was clearly unwilling at that time to rely alone on the Tenure Law, which was a much older statute. Consequently, there would be at least no express statutory ground for removal, in the absence of proof that membership in the

Communist party or other subversive organizations is related to competency in teaching, unless dependence is had upon section 12-a. It is evident that in Hughes' case the board of higher education chose to rest the dismissal on clear and express statutory grounds. It probably did not have to do so, but in doing so it invoked section 12-a.

A still further telling element is that the trial committee and the board of higher education declared Hughes ineligible to receive public employment of any kind. Such declaration could only be authorized by section 12-a of the Civil Service Law. Section 6206, the Tenure Law, authorizes dismissal, but does not, as a matter of law, mandate general ineligibility, as does section 12-a.

Given, then, that Hughes was dismissed and declared ineligible under section 12-a of the Civil Service Law, as well as section 6206 of the Education Law, the next question is whether he is entitled to a judicial hearing under that section. The board of higher education argues that the judicial hearing provided for in section 12-a is permissive and not mandatory. It argues further that, in view of the very full trial and hearing, with every opportunity to offer and confront witnesses and evidence that Hughes had, it was discretionary with the court at Special Term whether another hearing, this time judicial in character, should be granted.

We should first distinguish the kind of judicial review that administrative action is subject to under article 78 of the Civil Practice Act. Under that article, review may be had for a variety of errors of law that may have occurred in the making of an administrative determination. More importantly, it permits review to determine whether there was any competent proof of all the facts necessary to be proved in order to authorize the making of the determination and, if there was such proof, whether it was sufficient (Civ. Prac. Act, § 1296). No such issue nor any such ground for review is involved or suggested in this case. The question, nevertheless, is whether, under section 12-a, Hughes is entitled to a judicial hearing — an independent judicial rehearing and finding — because of his dismissal and the declaration of ineligibility under the statute. The legislative and judicial history yields a univocal answer that he is.

Section 12-a was enacted in 1939. When it was first introduced as a bill in the Legislature there was no provision for judicial review (Assembly Int. No. 1321, Print Nos. 1413, 2094). The bill was then amended to provide for a full judicial rehearing, as

is now contained in the law, but with the dismissed employee being entitled to bring the proceeding within one year rather than within four months, as it is now (Assembly Int. No. 1321, Print No. 2475). It was amended again, to eliminate the provision for a full judicial rehearing, but there was substituted therefor provision for limited review under article 78 of the Civil Practice Act (Assembly Int. No. 1321, Print No. 2659). When the bill reached the Senate, however, it was amended once again to reinstate the provision for a full judicial rehearing in place of the limited review under article 78, but limiting the time in which the proceeding might be brought to four months (Senate Rec. No. 591, Print No. 2726). This is the form in which the bill was adopted and became law. There was, therefore, the clearest consideration by the Legislature of three alternatives: (1) No provision for review; (2) Provision for limited review under article 78; and (3) Provision for judicial rehearing. The last was the alternative selected.

In approving the bill, the Governor said: " The bill before me contains effective judicial safeguards against any possible abuse. Any dismissal or determination of ineligibility can be passed on by the courts. The State Supreme Court may be petitioned for a hearing. And at such a hearing testimony must be taken in open court, a full opportunity for cross examinations must be given, the chance to present evidence provided. Finally, the bill places the burden of proof, not upon the civil service employee, but upon the official or government agency which brings the charges. In a democracy we must, in the last analysis, repose faith in the judiciary. This bill brings each case before the courts. The courts must observe and must prevent the invasion or abridgement of the proper exercise of the civil liberties bestowed upon every citizen by the Constitution of the United States and by the Constitution of New York State. I am confident that by this court procedure no harassment or injustice can result." (Public Papers of Governor Herbert H. Lehman [1939], p. 348.)

The Court of Appeals, in sustaining the constitutionality of the Feinberg Law, noted that the listing of subversive organizations by the Board of Regents was only after inquiry, and after such notice and hearing as may be appropriate. The listing then becomes the basis for a prima facie case against one who had been a member of such organization, and who continues as a member subsequent to such listing. This is so even though the teacher or other educational employee had not

been a party to the listing proceeding. Moreover, the Feinberg Law provided a further presumption, namely, that past membership was presumed to continue. But, the court found due process because, under section 12-a of the Civil Service Law, the public employee — a teacher, too — who is charged thereunder could offer evidence in the judicial proceeding to rebut the prima facie evidence. Speaking through Judge, later Chief Judge, LEWIS, it said: " Thus the phrase ' *prima facie* evidence of disqualification ', as used in the statute, imports a hearing at which one who seeks appointment to or retention in a public school position shall be afforded an opportunity to present substantial evidence contrary to the presumption sanctioned by the *prima facie* evidence for which subdivision 2 of section 3022 makes provision. Once such contrary evidence has been received, however, the official who made the order of ineligibility has thereafter the burden of sustaining the validity of that order by a fair preponderance of the evidence. (Civil Service Law, § 12-a, subd. [d].) Should an order of ineligibility then issue, the party aggrieved thereby may avail himself of the provisions for review prescribed by the section of the statute last cited above. In that view there here arises no question of procedural due process. Reading the statute in that way, as we do, we cannot say there is no rational relation between the legislative findings which prompted the enactment of the Feinberg Law and the measures prescribed therein to safeguard the public school system of the State." (*Thompson* v. *Wallin,* 301 N. Y. 476, 494, *supra.*)

Later, when the Feinberg Law was before the Supreme Court of the United States that court, in sustaining its constitutionality, quoted from our Court of Appeals the language above set forth, and concluded: " Where, as here, the relation between the fact found and the presumption is clear and direct and is not conclusive, the requirements of due process are satisfied ". (*Adler* v. *Board of Educ.,* 342 U. S. 485, 496, *supra.*)

In the *Thompson* case, the Court of Appeals affirmed simultaneously the decisions of the Second and Third Departments of the Appellate Division in two related cases (*Lederman* v. *Board of Educ. of City of N. Y.,* 276 App. Div. 527, and *Matter of L'Hommedieu* v. *Board of Regents,* 276 App. Div. 494). In *Matter of L'Hommedieu,* the Appellate Division had commented (p. 501): " It is to be noted that the provisions in the Feinberg Law have the effect of giving added protection to persons in the State public school system who might be charged,

under subdivision (c) of section 12-a of the Civil Service Law, with being a member of any society or group of persons, which advocates the overthrow of the Government by force, violence or any unlawful means.''

The court went on further to say (p. 502): ''Full and complete court review of any determination of the Board of Regents listing an organization, and of any determination of a board of education finding a teacher disqualified under the Feinberg Law, is available.''

In the *Lederman* case, similar reliance for compliance with due process* was placed upon the provisions of section 12-a which entitle the dismissed employee, including a teacher, to a judicial hearing, with the burden on the whole case placed on the one preferring the charges.

It is evident, then, that in this area of disciplinary action and the control of subversive activity the Legislature has provided an extraordinary safeguard. That safeguard requires a judicial hearing and a judicial finding in addition to the administrative remedies. Unlike the review which obtains under article 78, which serves to oversee the correctness of an administrative determination to a limited degree, the safeguard found in section 12-a is not satisfied with less than a judicial hearing and finding. For this the Legislature may have had cogent reason.

In the first place, dismissal for being a member of a subversive organization involves stigmatization to a degree approaching, if in fact not equal to, that of treason. Moreover, under section 12-a, dismissal mandates general ineligibility for any public employment or office. That is a consequence rarely following dismissal from public employment or office, as a matter of law, except for conviction of felony. (Cf. Penal Law, § 1823; but see Civil Service Law, § 14, subd. 4, where conviction for crime or dismissal for misconduct constitutes a basis for *discretionary* exclusion of applicants for positions in the civil service.) There may still have been further reason for distinguishing between an administrative determination that results in dismissal because of incompetency and unbecoming conduct and that which results only from activities in behalf of, or membership in, a subversive organization. Where incompetency or unbecoming conduct is

---

* Reference is not made to the *Thompson, Adler, Lederman* and *L'Hommedieu* cases in order to show that the due process clause requires a full judicial hearing. That is generally not so. Those cases are noted because section 12-a itself was viewed by the courts as requiring such a hearing. Once having so concluded, it was then clear to the courts that the Feinberg Law satisfied due process.

involved, the administrative agency is presumably expert, qualified by knowledge and experience, in making its findings, which should not be lightly disturbed in judicial review. Where, however, the determination relates to an issue which does not necessarily fall within the expertness of the administrative agency, it does not follow that the finding of the administrative agency is entitled to a rating of greater respect than one which may be obtained in court. It is not difficult to understand, therefore, why the legislative power, in this most delicate area, would invoke the mandatory use of a court hearing, embracing as it does the professional judge, the open court, the rules of evidence, and the broad scope of appellate review associated generally with judicial proceedings.

Thus, it is not material under section 12-a that the administrative agency may have had more than sufficient evidence before it to sustain its finding that Hughes had never withdrawn in good faith from the Communist party, as he claimed. He is, nevertheless, entitled to a judicial hearing and finding.

With respect to Specification II, namely, Hughes' failure to co-operate in making frank disclosure of his activity in the Communist party or of his membership, that is not before us. With regard to that phase of the matter, he has chosen to take his appeal to the State Commissioner of Education. And that is proper, for such misconduct, if established, relates to his competency and his conduct as a member of the staff, and does not involve a conclusive finding of ineligibility to hold any public office or employment.

The phase of the case, however, relating to Specification II raises some special problems. The specification and the finding of misconduct under it are governed by section 6206, and not by section 12-a. As to this specification and finding, no judicial hearing has been requested nor would such an application lie under section 12-a. Instead, Hughes is pursuing his appeal from the finding thereunder to the State Commissioner of Education. Should the commissioner affirm the finding, Hughes will be dismissed, just as finally as if his dismissal depended on section 12-a. There would, however, be this difference — he would not be rendered ineligible, as a matter of law, from holding any public office or employment. Consequently, this proceeding would not become academic, no matter what happened in the administrative appeal. On the other hand, it would not seem that Hughes is entitled to a stay of the order of dismissal, as also provided in section 12-a pending the judicial proceeding,

insofar as it depends on Specification II. Although, he would be entitled to a mandatory stay to the extent that his dismissal is effected under section 12-a. But, that does not present the court with an insuperable obstacle. Hughes can be granted a qualified stay, which would have no practical effect so long as his dismissal under Specification II remains unreversed.

In obtaining a judicial hearing, however, Hughes is not entitled to raise all the issues he poses in his petition. The only proper issue, of those he raises, is whether Hughes, in fact and in good faith, severed his relations or whether he has retained membership in the Communist party after its listing as subversive by the Board of Regents pursuant to the Feinberg Law.

The other issues raised by Hughes in his petition are merely arguments directed to the provisions of the Feinberg Law or assertions that the board of higher education failed to prove elements of the charges against Hughes, for which the board was entitled to rely on the presumptions provided in the Feinberg Law. Those presumptions are expressly covered in the statute and have been held valid in the *Thompson* and *Adler* cases (*supra*). Because the Feinberg Law implements section 12-a, insofar as personnel in public schools and colleges is concerned, they will continue to be available to the board in this judicial proceeding. This is so despite the rule provided in section 12-a that the burden of proof in sustaining the dismissal — that is, the burden of proof on the whole case — is " upon the person making such dismissal or order of ineligibility." There are, of course, many situations in the law where the party having the burden of proof, nevertheless, has available to him rebuttable presumptions of fact.

Accordingly, the order of Special Term should be reversed and the petition for a hearing granted pursuant to section 12-a of the Civil Service Law, together with a limited stay in accordance with the views expressed herein.

CALLAHAN, J. (dissenting). Petitioner, an assistant professor at Hunter College, was dismissed after a full trial by the board of higher education on charges of conduct unbecoming a member of the staff arising out of membership in the Communist party. He now petitions for a trial *de novo* before the Supreme Court on part of the charges against him, claiming that he is entitled to such relief under the provisions of subdivision (d) of section 12-a of the Civil Service Law. We are of the opinion that the statute does not warrant a splitting of the charges in this fashion,

nor does it apply where, as here, a full hearing was had by a teacher having tenure on a charge of conduct unbecoming a member of the staff under section 6206 of the Education Law. Petitioner, it is conceded, had sufficient service to entitle him to tenure under this section.

The relevant provisions of section 6206 are as follows:

" § 6206. *Tenure.*

" 1. The following words and phrases, as used hereinafter, and for the purposes of this section, shall have the following meanings:

" a. ' Board ' shall mean the board of higher education in the city of New York. * * *

" d. ' Tenure ' shall mean the right of a person to hold his position during good behavior and efficient and competent service, and not to be removed therefrom except for cause in the manner hereinafter provided. * * *

" 10. Persons having tenure under the provisions of this section may be removed or suspended from the permanent instructional staffs for one or more of the following reasons: * * *

" b. neglect of duty; * * *

" d. conduct unbecoming a member of the staff. This provision shall not be so interpreted as to constitute interference with academic freedom."

Proceedings for the removal of such a person shall be conducted in accordance with the by-laws of the board, and shall be initiated by service by the board upon the person involved of a notice setting forth all the charges pending against him. Such a person so charged shall be entitled to a hearing with right of representation by any person or persons of his choice before any committee which the board may appoint to investigate such charges, or, in the event that such a committee is not appointed, before the board. In cases in which such a committee is appointed, such a person shall further be entitled to an appeal on the record with right of representation by any person or persons of his choice before the board prior to its final determination of the question of his removal. No such person shall be removed except at a regular or special meeting of the board, by an affirmative vote of the majority of all the members of the board, except members ex officio. For the purposes of any such proceeding, the board by its chairman or the chairman of any such committee shall have power to subpœna witnesses, papers and records, and to administer oaths.

Pursuant to the foregoing sections, the board of higher education adopted by-laws outlining procedure for trials by a duly appointed committee, including the following:

" § 123. Trial. a. Such Committee shall conduct the trial according to such rules as the Board may from time to time establish for the conduct of such trials. The rules of the Board or in their absence those employed by the Committee shall govern the trial and the Committee shall not be bound by the rules of evidence observed in courts of law.

" b. Such a person so charged shall be entitled to representation during his trial by any person or persons of his choice. The accused shall be confronted with the witnesses against him, shall be privileged to be present at all sessions of the trial committee when testimony is being heard, shall have the right to examine and cross-examine witnesses and to produce witnesses and relevant documents. Such a person shall further be entitled to an appeal on the record with right of representation by any person or persons of his choice before the Board prior to its final determination of the question of his removal."

On April 12, 1954, respondent board duly adopted a " statement of policy " in connection with a projected investigation of subversive activities as follows: " Any staff member who is the subject of disciplinary charges shall receive a written statement of such charges. To the extent that any testimony given by a staff member at a private hearing becomes relevant in a disciplinary trial of such staff member, the staff member shall be entitled, upon his request, to a copy of such relevant private testimony. The disciplinary trial will be public and upon such trial he is entitled to be represented by counsel of his own choosing with the right to confront the witnesses, to cross-examine such witnesses, to testify, and to call witnesses in his own behalf. Any finding of guilt must be supported by substantial evidence. The trial will be conducted in full accordance with an observance of the safeguards afforded to staff members under the State Tenure Law. The record of the entire trial is subject to review by way of an appeal to the courts or to the State Commissioner of Education. The method of appeal is at the option of a staff member."

On April 12, 1954, a special committee of respondent board filed charges against petitioner, reading:

" Charges

" Charles W. Hughes, an Associate Professor, having tenure in the Department of Music in Hunter College, under the juris-

diction of the Board of Higher Education of the City of New York, is hereby charged with ' neglect of duty ' and ' conduct unbecoming a member of the staff.' "

These charges were supported by three lengthy specifications. The present application deals solely with " Specification I ". This specification, after detailing the appointment and service of petitioner, alleges, in substance, that Hughes joined the Communist party in 1938 and continued membership thereafter, and that during his membership the party advocated the overthrow of the United States Government by force and violence. It further alleges that the party exacts from its members adherence to doctrines antagonistic to the established standards of conduct of members of the college staff under the jurisdiction of the board of higher education. The specification then sets forth certain provisions of section 12-a of the Civil Service Law, and of section 3022 of the Education Law (commonly known as the Feinberg Law), and of rules adopted by the Board of Regents pursuant to the latter law proscribing communistic activities. Notice was given in the specification that upon the trial certain presumptions created under the rules of the Regents would be invoked to establish continued membership in the party, and that unless Hughes showed that his membership in the Communist party had been terminated by him in good faith, the acts charged in the specification, if proved, would be deemed conduct unbecoming a member of the staff.

The petitioner's answer denied only the allegations in Specification I suggesting that he had any knowledge that the Communist party was subversive and denied that there was any basis for invoking any presumption to be drawn against him because of the action taken by the Board of Regents.

Specification II charged Hughes with refusal to answer questions as to the connection of other members of the college staff with communistic activities.

Specification III charged a conspiracy with others, but, as it has been dismissed, we need not consider it further.

The board appointed a trial committee, which, after receiving petitioner's answer to the charges, placed him on trial. Two other staff members were tried at the same time. The hearings lasted several months. All the requirements in the by-laws of the board and in its statement of policy were fully complied with. Over a thousand pages of testimony were taken. Throughout the hearings petitioner was represented by counsel. He was confronted with the witnesses against him. He was given an

opportunity and did testify, and called witnesses in his own behalf. He admitted former membership in the Communist party, but claimed to have left it in 1941. He admitted the party's subversive objectives, but denied membership required him to adhere to any principles incompatible with his position on the college staff. He refused, however, to divulge whether any other members of the teaching staff were communists.

The committee, after completing its labors, filed a report finding petitioner guilty of the charges of unbecoming conduct on all three specifications. The matter was then referred to the whole board which, in confirming the report and dismissing the petitioner from his position, did so under the first two specifications, and held that the third specification had not been sufficiently established.

It is apparent that Specification I rested only in part on section 12-a of the Civil Service Law to show unbecoming conduct. Membership in the Communist party was proscribed by the Feinberg Law, by the Rules of the Board of Regents adopted pursuant thereto and by several resolutions adopted and published as early as 1941 by the board of higher education. Specification II did not rest on section 12-a, but related entirely to the question as to whether the refusal to divulge the names of other communists on the staff would constitute conduct unbecoming a member of the staff.

Petitioner then came into the Supreme Court with this proceeding wherein he seeks to review not the finding of guilt on the charges of unbecoming conduct, but only that portion of Specification I resting on section 12-a.

Petitioner at the same time also has an appeal before the State Commissioner of Education, again not from the finding of guilt on the charge of unbecoming conduct, but from certain findings or parts of Specifications I and II.

What is being attempted here is to get a retrial in the Supreme Court of that part of the charge of unbecoming conduct which depends upon the specification that membership in the Communist party constituted a violation of the public policy of this State as declared in section 12-a of the Civil Service Law. It is conceded that this allegation constituted only part of Specification I, and that a complete hearing was had and a disposition made on the several elements supporting the broader charge. The petitioner seeks to split the charge into parts, obtain a new trial on the portion relating to membership in the Communist party, and its effect on his fitness, although he

admitted the fact of membership. He also wants a review by the Commissioner of Education of the order of dismissal insofar as it rests on Specification II, and any presumption applied in his case under certain statutes and resolutions.

The petition seeking removal of part of the proceedings to the Supreme Court enters into a discussion of the nature of the specifications, without even referring to the charge which the specifications amplify, i.e., conduct unbecoming a member of the staff under section 6206 of the Education Law. It states that the trial committee's report has the effect of disqualifying petitioner from other employment because of a violation of section 12-a of the Civil Service Law as if he had been tried on a charge made under that section. He then proceeds in paragraph 6 of his petition to state that: " 6. Included in said charges and in the recommendations of the Trial Committee as approved by the Board were matters other than petitioner's alleged disqualification under Civil Service Law § 12-a, and with respect to these matters petitioner is taking an appeal to the Commissioner of Education of the State of New York requesting said Commissioner to withhold action on that appeal until the question of petitioner's disqualification under Civil Service Law § 12-a has been determined by this Court upon the hearing provided by law."

Thus, petitioner not only seeks separate reviews, but is attempting to regulate the order in which they will be heard and decided.

It is only proper to note that the trial committee did report that petitioner had been proved guilty of acts which constitute violation of section 12-a of the Civil Service Law, and it also referred to breach of the Feinberg Law. But these findings were set forth as only part of the several grounds stated in support of an adjudication of conduct unbecoming a member of the college staff, and do not alter the fact that the charge being tried and disposed of was one under the Education Law.

If a charge of unbecoming conduct may be split in this fashion and separate reviews had on various portions of the specification, conflicting decisions might well result. Furthermore, by the procedure attempted a trial de novo would be required in the Supreme Court of the portion of Specification I charging membership in the Communist party, although the petitioner already had a complete trial upon which he admitted the fact of such membership.

The Supreme Court trial, we think, was properly denied, because the charge here was not brought under section 12-a of

the Civil Service Law, but under section 6206 of the Education Law. We are of the further view that the board of higher education had the right to proceed under section 6206 of the Education Law, and in fact, was required to do so because petitioner was a member of the instructional staff with tenure. Having proceeded under that section, the provisions for review set forth in that section control.

We add, however, that we find that the statutes relating to removal of civil servants for membership in subversive organizations are to some extent overlapping. We also find that the trial committee overestimated the effect of its report, when it stated that it resulted in disqualification from eligibility in any civil service position. That would only be so if the civil servant was tried on a charge based on violation of section 12-a. Here the charge was under section 6206 for conduct unbecoming a member of the staff. It has no direct effect of adjudicating ineligibility.

We may now consider in detail the various statutes that have reference to subversive acts of civil servants.

In 1939, the State Legislature adopted section 12-a of the Civil Service Law. The section relates to ineligibility for the civil service. It provides, in substance, that no person will be appointed to any office in the civil service, or retained therein, who is guilty of various specified subversive acts. Included specifically in the list of servants affected is a member of the teaching staff in a public college. The prohibited acts relate to advocacy of the overthrow of the Government of the United States, or any subdivision thereof, by force or violence. The methods enumerated are (a) teaching of advocacy of such doctrines by word of mouth; (b) printing or distributing any book or paper advocating such doctrines; and (c) organizing or becoming a member of any group which teaches or advocates such doctrines.

Subdivision (d) of the section then provides: " A person dismissed or declared ineligible may within four months of such dismissal or declaration of ineligibility be entitled to petition for an order to show cause signed by a justice of the supreme court, why a hearing on such charges should not be had. Until the final judgment on said hearing is entered, the order to show cause shall stay the effect of any order of dismissal or ineligibility based on the provisions of this section. The hearing shall consist of the taking of testimony in open court with opportunity for cross-examination. The burden of sustaining the validity of the order of dismissal or ineligibility by a fair

preponderance of the credible evidence shall be upon the person making such dismissal or order of ineligibility.''

But one having tenure as a member of the instructional staff in a college subject to the jurisdiction of the board of higher education is expressly granted the privilege of a former trial on charges under section 6206 of the Education Law, and of appeal through administrative channels. In this respect such a person was not in the category of the ordinary civil service employee, or even a teacher without tenure.

It is to be remembered in construing this law that it applies to civil employees in every branch of the Government, Statewide and local. Under other provisions of the Civil Service Law, as it then existed, a civil service employee, if not a veteran, could be removed merely upon receiving written notice of such proposed removal and the reasons therefor, provided he was furnished with a copy of any charges against him, and that he be allowed a reasonable time for answering the same in writing (Civil Service Law, § 22). The protection of a formal trial, administrative or otherwise, was not afforded to him. Accordingly, the Legislature in adopting section 12-a saw fit, where the dismissal or ineligibility was based on communistic activities, to provide that a trial before the Supreme Court would be assured the employee.

It is difficult to conceive that the Legislature intended that there be a trial *de novo* of a charge that had already been fully tried. Of course, if the employee had received no hearing, but merely a copy of the charge and a chance to answer, or if ineligibility had been declared as to a candidate who could not have had any formal trial nor even a hearing, it is readily understandable why the Legislature might provide that he have a hearing in court before he was dismissed or declared ineligible. But even if we assume that subdivision (d) of section 12-a because of its broad provisions intended that a second hearing be had as to removal or disqualification, although there had already been one full and complete trial, at least the section should be held to apply only where a direct charge of violation of section 12-a is involved. It should not be extended to cover a case of removal of a permanent member of the instructional staff of a college for unbecoming conduct, where violation of the policy expressed in section 12-a was involved only incidentally. The conduct proscribed as subversive under section 12-a had been likewise proscribed under resolutions of the board of higher education. Such a person under a special statute relating to those in his category was entitled to and in this case

did have a trial, and was afforded a right of appeal to the Commissioner of Education. The existence of tenure gave such an employee rights under a particular statute, and the statute as to civil employees generally should not be applied.

As some further indication that subdivision (d) of section 12-a was not intended to authorize removal of part of a charge pending before the board of higher education, we may consider the phraseology that an " order to show cause " is to be obtained which shall stay all administrative proceedings until the Supreme Court adjudicates the matter. This would indicate that the statute contemplated a stay of all administrative proceedings based on ineligibility under 12-a. Such a course would hardly seem applicable to charges of conduct unbecoming a member of the instructional staff under section 6206 of the Education Law. In that sort of case the unbecoming conduct might be based on any number of specified acts having no relation to 12-a, and there would seem to be no good reason to stay all the proceedings merely because one phrase of it related to some extent to conduct described in 12-a.

Subdivision (d) of section 12-a neither expressly nor impliedly required that because the acts specified in 12-a are being relied on among other statutes and resolutions to show conduct unbecoming a member of a college staff under section 6206, the single factual issue of whether section 12-a was violated must be tried separately in the Supreme Court. That such procedure was not intended is evidenced not only by the special provisions as to review under section 6206, but by the very inappropriate step of splitting the charges that would result if the petition here should be granted.

Section 6206 of the Education Law was enacted long prior to 1939, when section 12-a went into effect. It has not been repealed expressly or impliedly. The board was required to proceed under it, where the employee had tenure. When it ordered dismissal, section 6206 provided for a complete trial and review by the Commissioner of Education (*Matter of Board of Higher Educ.* v. *Cole,* 288 N. Y. 607). The provisions of section 6206 would appear to control not only this trial, but any review of the determination. The Commissioner of Education in a memorandum issued at the time of the adoption of section 254 of the Board of Regents pursuant to the Feinberg Law, stated: " 3. The preferment of charges. Neither section 12-a of the Civil Service Law nor sections 3021 and 3022 of the Education Law modifies in any way the rights accorded to teachers under the tenure laws."

Another statute relied on by the board to show the public policy violated by the petitioner, which it was charged constituted unbecoming conduct, was the so-called Feinberg Law enacted as chapter 360 of the Laws of 1949. This chapter had two provisions (1) a declaration of policy contained in its preamble, and (2) the statutory text, which became section 3022 of the Education Law. It sets forth its objective of preventing communistic infiltration into the public school system, and to that end directs the Board of Regents to prepare lists of subversive organizations in which membership shall establish prima facie grounds for removal of a teacher. This statute contains no procedural provision to make it operative, and there can be little doubt that it was intended to do no more than state a declaration of policy to be enforced under other procedural sections of the law. It refers in its text to section 12-a of the Civil Service Law and section 3021 of the Education Law. The latter section forbade seditious utterances and acts by teachers in the public schools.

Of course, violation of the policy provided in the Feinberg Law could be charged as conduct unbecoming a member of the staff of a public college. So could violation of the policy expressed in section 12-a of the Civil Service Law, or violation of the policy of the board as declared in its by-laws or published resolutions. And, by analogy, so could violation of any section of the Penal Law of the State. In fact, any immoral or improper act affecting a teacher's eligibility might be specified to spell out conduct unbecoming a teacher. That section 12-a was relied on in a particular case would not mean that the accused was being charged under section 12-a any more than a specification of misconduct under some section of the Penal Law would mean he was being tried for a crime. Nor would a finding of fact that the teacher's conduct constituted a violation of section 12-a disqualify him from eligibility as a civil servant any more than a finding that he violated some section of the Penal Law in committing unbecoming conduct brand him as a felon or make him subject to the disqualification which follows conviction for a felony. The result of the adjudication would merely be dismissal because he was found to have committed conduct unbecoming to a member of the college staff.

If the board of higher education had brought a direct proceeding to remove petitioner from office because he violated section 12-a of the Civil Service Law, he might well contend that he was entitled to be charged and tried under section 6206 of the Educa-

tion Law because he had tenure. When he is charged under the latter law, he has no ground for complaint and is confined to the trial and appeal provisions of this statute.

It is contended by petitioner that he will be prejudiced by the finding of the trial committee that he violated section 12-a of the Civil Service Law in that he would not be eligible for other civil service appointment. The short answer to that contention is that there has been no adjudication against him, except conduct unbecoming a member of the staff. Assuming there has been a finding of a constituent fact or a conclusion of law in connection with the adjudication of unbecoming conduct, which might be *res judicata* against petitioner in any future proceeding, this would not warrant applying a review procedure that would be available only if the charge had been based on the constituent fact referred to. There was no direct proceeding against petitioner under section 12-a of the Civil Service Law and, consequently, he may not have a new trial under subdivision (d) of that section.

We are not required to decide, nor do we decide at this time, whether, if the charges against petitioner were conduct unbecoming a member of the staff specifying solely a violation of section 12-a of the Civil Service Law in support of the charge and he had received a full trial such as was afforded him, he would have the right to a second trial under subdivision (d) of the section. The purpose of the subdivision is not clear in respect to persons already afforded a full trial. Whether it intended to make a second trial before the Supreme Court an absolute right where the charges rested on section 12-a, or whether it was discretionary with the court to grant a further hearing and recall the witnesses, is not clear. It is enough for the present to hold that upon the present broad charge the right is not afforded to petitioner to have a second trial as to part of the charges under subdivision (d) of section 12-a of the Civil Service Law.

The order appealed from should be affirmed.

PECK, P. J., and BASTOW, J., concur with BREITEL, J.; CALLAHAN, J., dissents and votes to affirm in opinion in which RABIN, J., concurs.

Order reversed, with $20 costs and disbursements to the appellant, and the motion for a hearing granted, together with a limited stay in accordance with the opinion herein. Settle order on notice.