Ormand N. Gale, J.
Both defendants have appealed to this court from a judgment of conviction for violating the following-sections of the Syracuse Housing Code, rendered after trial on February 6, 1969 by Honorable Rocco P. Regitaho, Chief Judge of the City Court of Syracuse, Criminal Division:

Thereafter, on May 7, 1969 a fine of $150 apiece was assessed against each defendant.
The original action was instituted on behalf of the City of Syracuse against the defendants, who own several parcels of *834 residential property within the city limits, for specific violations allegedly existing at rental property known as 118 Kirk Avenue in the city. On June 19, 1968 the Syracuse housing inspectors were apparently admitted to the property by the tenant in residence in order to view the premises. Thereupon the inspectors noted ten violations of the Syracuse Housing Code.
On June 24, 1968 a notice of the violations and an order to comply with the statutory requirements were mailed to the appellants. On August 1, 1968 a reinspection was effected again, through authorization of the tenant. It appears from testimony at the trial that little work had been done, and on August 7,1968 a final order was sent to the defendants. Finally, on August 14, 1968 a work permit was obtained sufficient in scope to remove the violations. At that time, the inspectors went to the premises with appellant-defendant Julie Taddeo, in order to point out the violations to be corrected. On September 20 of that same year, another final order to comply was mailed to appellants. Approximately five weeks later, an action was instituted through service of a summons and complaint upon the defendants-appellants which charged failure to correct numerous violations. This court takes note of the fact that no tenants were ever made parties to this proceeding.
In seeking reversal, defendants-appellants now contend the following are several errors committed at the trial:
Basically, they attack the Syracuse Housing Code as being unconstitutional in that it fails to provide a provision to obtain a search warrant to review the premises. The claim is made that the United States Supreme Court declared a similar code unconstitutional on grounds of a “ warrantless inspection ” in Camara v. Municipal Ct. (387 U. S. 523).
Secondly, the defendants-appellants charge that under section 27-113 of the Syracuse Housing Code, as amended, refusal of an owner or occupant to allow inspection without a search warrant is deemed an additional violation. Concluding, therefore, that this provision is blatantly unconstitutional on its face, they cite the recent Court of Appeals decision (Matter of Finn’s Liq. Shop v. State Liq. Auth., 24 N Y 2d 647).
Defendants-appellants claim that there is no showing from a reading of the minutes that the plaintiff met the burden of proving consent was given by the landlord. Further, they argue that the tenant had no right to give consent for the absentee owner of the premises. Even if the tenant’s action be construed as consent, they argue that submission to authority is not consent.
In opposition to this appeal the City of Syracuse alleges that absence of formal administrative steps to obtain a search war *835 rant does not make the Syracuse Housing Code unconstitutionally defective, hut argues that in any event that question is not properly before this court, because defendants-appellants were not charged with a violation of this section, i.e., they were not charged with failing to admit an inspector to the premises.
Plaintiff-respondent challenges the standing of the owners to even argue the waiver by the tenant to entry into the premises and further would have this court construe Julie Taddeo’s actions in July of 1968 as consent when she did, in fact, meet the inspectors at the premises.
We cannot agree with the contention that the landlords lack standing to contest alleged violations against them, which consequently would subject them to fine or eventual imprisonment. However, granting them standing to contest the violations does not, by any means, dismiss their liability and responsibility with regard to their property.
Initially, we must follow the well-settled rule that the courts have inherent authority to determine whether a statute enacted by the Legislature transcends the limits imposed by the Federal or State Constitution (Lincoln Bldg. Assoc. v. Barr, 1 Misc 2d 560, affd. 1 N Y 2d 413). The burden of proof is on one attacking the constitutionality of the statute (New York State Thruway Auth. v. Ashley Motor Ct., 12 A D 2d 223, affd. 10 N Y 2d 151). Further, the court has the right to assume a statute constitutional in the first instance until otherwise determined by the higher courts (People v. Wright, 12 Mise 2d 961). No court will invalidate a statute on constitutional grounds except on a clear showing that the legislation exceeds the constitutional power (Thompson v. Wallin, 276 App. Div. 463, affd. 301 N. Y. 476).
Our reasoning is further bolstered by the recent Court of Appeals decision (People v. Pagnotta, 25 N Y 2d 333, 337) which enunciates the rule that a strong presumption of constitutionality attaches to legislation duly enacted within our jurisdiction: ‘ ‘ Indeed, we have held that in order to declare a law unconstitutional, the invalidity of the law must be demonstrated beyond a reasonable doubt. (Matter of Van Berkel v. Power, 16 N Y 2d 37,40.)”
The court followed the guideline of balancing: ‘ ‘ restriction upon an individual’s freedom of action in the name of the police power [against] reasonable relation to the public good (People v. Bunis, 9 N Y 2d 1, 4.) ” and concluded that the statute in question was a completely reasonable restriction upon the individual for the public good.
Such is the issue in the instant case, and we must therefore conclude that the pertinent sections are a valid exercise of legisla *836 tive power and a constitutionally enacted segment of the Syracuse Housing Code.
With this presumption of constitutionality having been met, we feel it necessary to distinguish the Camara and Finn rationale (supra) from the instant fact situation. At the onset the Camara case is clearly distinguishable in that a tenant who had refused consent to a search of his premises thus subjected himself under the code in question to possible fine and imprisonment. It is vital to our decision that the tenant, residing at 118 Kirk Avenue, City of Syracuse, did not in fact refuse admittance to the inspectors. Therefore, the rationale of Camara, (supra) must be limited on its facts to the necessity of obtaining a search warrant upon refusal of the occupant to a search of his premises. Strictly construing the case, the court does not discuss the effect of consent upon its decision, but in fact sets forth the principle that “ a search of private property without proper consent [emphasis added] is ‘ unreasonable ’ unless it has been authorized by a valid search warrant ” (Camara v. Municipal Ct., 387 U. S. 523, 528).
Similarly, the Finn decision involved a licensee of a liquor store who was asked for permission to search the back room of the store by administrative officers and who consented to the request. The commercial relationship cannot be equated to the instant case wherein we must balance the sacred right of the tenant who had validly entered into a contractual relationship under an existing lease with defendant-appellants to quietly enjoy exclusive possession to their premises during the term of the lease. It is, therefore, clear that the landlord had, by contract, conveyed to the tenant full possessory rights which permitted the tenant to admit and deny entry at will (Baumann v. City of New York, 227 N. Y. 25).
We cannot give any validity on this appeal to the question of search and seizure as it applies to the landlord. As noted by the court below: “it appears conclusively from the evidence that the inspector obtained permission from the tenant or tenants to search the premises ”.
£ £ If the law is to have any meaning, it must be to first lean toward survival rather than to the establishment or maintenance of individual rights. Eventually, abstract rights must give way to concrete perils. Thus, in interpreting the law and the Constitution, the judge of the future must be more astute in protecting man against himself ” (53 Judicature, Nov. 1969, No. 4, 142).
The exigencies of our social predicament today as applied to poor housing lead us inescapably to the conclusion that there exists a need on the local level for enforcement by such legisla *837 tion as is being challenged here. The original concept that a man’s home is his castle has been gradually eroded to meet the needs of the times. On the Federal level, it has become increasingly clear that we cannot keep the pace of adequate housing which then necessitates enforcement of local laws.
Because poor housing standards affect both the health and attitudes of our crowded populace to such a crucial degree, we must affirm the judgment of conviction of the lower court. Submit order accordingly.