OPINION OF THE COURT
Gabrielli, J.
Petitioners seek judicial review of a competitive examination administered by the Manhattan and Bronx Surface Transit Operating Authority (MABSTOA) to determine examinee’s eligibility for promotion from dispatcher to senior dispatcher. The basic issue before us is whether this proceeding was commenced within the four-month Statute of Limitations (CPLR 217).
Although MABSTOA is not covered by the Civil Service Law, it has adopted rules and regulations requiring that promotions be from eligible lists promulgated on the basis of merit and fitness ascertained by competitive and fair examinations, just as in regular civil service examinations; and the same rules and procedures apply. By notice dated November 6, 1972 MABSTOA announced that it would conduct an examination to establish an eligible list for the position of senior dispatcher. The announcement described the responsibilities of the job, eligibility requirements, and the components of the test, which consisted of a written exam to be weighted at 40% and an oral exam to be weighted at 50% with the final 10% to be based on seniority credit. The written examination was held on December 16, 1972 and the candidates were notified whether they passed or failed that examination on February 1, 1973. Petitioners and the others were informed of the date and time of their oral test appointment. The oral tests were held on two separate dates: February 17, 1973 for those whose last names begin with the letters A-M and February 24, 1973 *378 for the others. On April 18, 1973 a tentative eligible list, based on the test results, was published, and simultaneously each candidate was notified of his right to appeal. The candidates also received a "Notice of Results” dated April 23, 1973 which indicated their test score for each part and a final average. By letter dated August 31, 1973 the petitioners and all other persons who took appeals, were notified individually of the results of their appeals.* Finally on October 10, 1973 the final revised eligible list was published indicating adjustments made necessary by the appeal determinations.
On February 8, 1974 the petitioners commenced this article 78 proceeding alleging that the oral examination was improperly administered due to, inter alia, a lack of sufficiently objective standards in the rating of the oral test, the dissemination of questions and answers on the oral test in the intervening week between the first and second sessions of that test and the use of improper personal data on the background of the candidates in rating the exam. The petition alleged that certain candidates were asked questions about their religious and social background, and other activities which were irrelevant and inappropriate for an evaluation of their qualifications. The petitioners also charged that the examiners used the same questions during both sessions of the oral examination and that in the intervening week between sessions the questions asked on February 17 were widely disseminated within MABSTOA to those who would take the examination a week later to the detriment of the candidates who first took the test. In addition it is alleged that a review class was held in the intervening week for those who were about to take the examination, in which questions and suggested answers were discussed.
The respondents moved in Special Term to dismiss the petition on Statute of Limitations grounds, urging that when a challenge is made to the conduct of an examination rather than the specific results, the challenger must commence his action within four months of the completion of the exam. Respondents contended, in part, that the time period commenced on February 24, 1973, the last day of the oral examination and since the action was not begun until February 8, *379 1974 the four-month Statute of Limitations had run. Special Term denied the motion, holding that the time bar is not applicable to a proceeding which complains of the continuing wrong of promulgation and utilization of an unlawful eligible list and that, in any event, the four-month period had not run from the time of the final and binding determination, apparently meaning October 10, 1973 when the revised eligible list was published, and the time when petitioners learned of their aggrievement. The court then referred the issue whether the exam was fair and competitive to a special referee to hear and report.
The special referee found, on the basis of evidence presented, that the prior knowledge by some competitors of the questions which might be used on the exam so impaired the competitiveness of the examination as to invalidate the test on general grounds of fairness. Aside from the intervening study session, the referee found that the use of the same questions in two separate weeks raised questions as to its fairness and the fact of the study session only furthered the conclusion that some candidates had an unfair advantage. Special Term confirmed the referee’s report and granted judgment accordingly.
The Appellate Division reversed the judgment on the Statute of Limitations grounds without reaching the merits of the action. That court ruled that the critical date for purposes of the four-month period was August 31, 1973, the point when most petitioners were informed of the result of their administrative appeals. On the issue of the Statute of Limitations, the dissenters at the Appellate Division held that the action was not time-barred since it was not until petitioners received notice of their final rating and standing on the eligible list that they were properly aggrieved. Mr. Justice Samuel J. Silverman, dissenting on this issue, noted that "it is unrealistic to expect a civil service employee to institute an article 78 proceeding attacking an examination until he knows his standing on the eligible list as finally promulgated” (57 AD2d 514, 515).
The question now before us is when does the Statute of Limitations begin to run. Several dates are proffered for consideration: February 24, 1973, the last day of the oral examination; August 31, 1973, the date when most petitioners were informed of the result of their administrative appeals; or October 10, 1973, the date when the final revised eligible list *380 was published. CPLR 217 provides, in pertinent part, that "a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner”. In analyzing the Statute of Limitations issue we must first ascertain what is the determination sought to be reviewed. Petitioners seek to review the agency’s determination as to their eligibility for promotion. The mere administration of the test is not the agency action subject to review but rather it is the promulgation of the eligible list based on the allegedly unfair exam which constitutes the reviewable administrative determination. The test, standing by itself, gives rise to no cause of action. It is only when final and binding action is taken on the basis of the test that the action accrues. Clearly then it cannot be said that the time period began to run on February 24, 1973 when the final testing was completed for no determination had yet been made on the basis of the exam.
On April 18, 1973 there was an initial, tentative, eligible list promulgated. But this determination was certainly far from final and binding since each candidate, at this point, properly expected that the list would be subject to administrative adjustments and revisions based on the disposition of the anticipated potential appeals. This list was not a final and binding determination within the meaning of CPLR 217 (cf. Matter of Castaways Motel v Schuyler, 24 NY2d 120, 126).
On August 31, most candidates received separate notification of the disposition of their individual appeals, if appropriate. Although at this point they had knowledge concerning their own adjusted scores, they still remained ignorant as to their revised status in relation with the other candidates and, of course, their positions on the list. For a determination to be final "upon the petitioner” it must be clear that the petitioner seeking review has been aggrieved by it (Matter of O’Neill v Schechter, 5 NY2d 548). As we said in Matter of O’Neill (supra, p 554), and significantly apt here, "[i]t is axiomatic that 'Administrative procedure will be reviewed only at the instance of a person allegedly aggrieved thereby’ (Lederman v. Board of Educ., 276 App. Div. 527, 531, affd. 301 N. Y. 476, 493). As the court pointed out in Matter of Abramson v. Commissioner of Educ. (1 A D 2d 366, 371), petitioners 'had no reason to institute a judicial proceeding to challenge [respondents’] decision until they knew that they were aggrieved by it’ ”, It was not until the final revised eligible list was promul *381 gated on October 10, 1973 that petitioners had a final determination from which to ascertain the possible consequences, as to them, of the allegedly improper examination (see Mundy v Nassau County Civ. Serv. Comm., 44 NY2d 352, decided herewith). None of the petitioners was able to know whether the results of all of the appeals submitted, as well as his own, would reshape the list or alter his rating as to substantially affect his interests.
 In order for the Statute of Limitations to start running there must be a determination "final and binding upon the petitioner” (CPLR 217) and it must be one by which petitioner is aggrieved. Since such a determination was not made until October 10, 1973 when the final, revised eligible list was published, the limitation period did not begin to run until that date. This proceeding, commenced on February 8, 1974, is not time-barred, and the order of the Appellate Division should be reversed.
Since the Appellate Division decided this case on the Statute of Limitations issue only, this matter should be remitted to that court for review of the merits of the application (CPLR 5613). In view of our reversal of the determination of the Appellate Division and remand to that court, we need not reach the contentions of the intervenors which remain for consideration by that court.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to that court for a consideration of the merits.

 Petitioner Bryne was notified of the denial of his appeal by letter dated July 26, 1973 because of the special nature of that appeal, but all others were notified by letter dated August 31, 1973. In view of our determination in this matter, this difference in date is of no consequence.